**Dan ANDRADE (1) and Joe Carrillo (2), Individually, and on behalf of all other persons similarly situated**

v.

**The UNITED STATES.**

**PITT RIVER TRIBE et al.**

v.

**The UNITED STATES.**

**Nos. 347-72, 47-73.**

United States Court of Claims.

Decided Oct. 17, 1973.

George Forman, Escondido, Cal., attorney of record for plaintiffs (No. 347-72); Bruce R. Greene, Berkeley, Cal., Aubrey Grossman, San Francisco, Cal., David Getches, and John E. Echohawk, Boulder, Colo., of counsel.

Aubrey Grossman, San Francisco, Cal., attorney of record for plaintiffs (No. 47–73); Bruce R. Greene, Berkeley, Cal., David Getches, John E. Echohawk, Boulder, Colo., and George Forman, Escondido, Cal., of counsel.

Ralph A. Barney, Washington, D. C., with whom was Asst. Atty. Gen., Wallace H. Johnson, for defendant (in both cases).

Before COWEN, Chief Judge, and SKELTON, NICHOLS, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

### PER CURIAM:

In September of 1972, attorneys for the above petitioners attempted to file in this court petitions which sought, in effect, to overturn a judgment of the Indian Claims Commission, 13 Ind.Cl. Comm. 369 (1964). Petitioner Andrade sought relief under 28 U.S.C. § 1491 for breach of a fiduciary duty on the part of the United States. That petition (No. 347–72) was accepted for filing by the clerk of the court on September 11, 1972. Petitioner, Pitt River Tribe, attempted a belated appeal of the Indian Claims Commission judgment. This petition did not meet the requirements set out in the Rules of the court and was not accepted for filing. After the Pitt River Tribe, petitioner, failed in an attempt to have the Commission reopen its proceedings, it filed an amended petition in this court which included a prayer for relief under 28 U.S.C. § 1505. This petition was accepted for filing as to relief under § 1505 only, on February 2, 1973 (No. 47–73). See order of February 2, 1973. A request for consolidation of the two petitions was denied without prejudice by trial judge Schwartz on March 2, 1973. The Government has moved for summary judgment in both cases. The two cases will be dealt with in this one opinion because of the similarity of the claims made, and relief sought.

The case before the Commission involved nine dockets (Nos. 31, 37, 80, 80–D, 176, 215, 333 and 347). All were claims for compensation on behalf of various groups of California Indians. In all of the dockets the Commission rendered interlocutory judgments in favor of the Indians as to title and dates of taking. Thereafter, proceedings before the Commission were suspended while the Justice Department and the attorneys for the Indians entered into negotiations on a possible settlement. On July 31, 1963, a proposed settlement was reached whereby the Indians would consolidate all claims and release them in return for the sum of $29,100,000. This was agreed to, subject to approval by the Indians and the Bureau of Indian Affairs. A notice of the proposed settlement was sent to all those affected Indians enrolled under an Act of May 18, 1928, 45 Stat. 602. Though a vociferous minority opposed it, the settlement was approved in a series of votes and mail ballots by a majority of the Indians and thereafter, on May 7, 1964, by the Commissioner of Indian Affairs. Opposition was particularly active in the Pitt River Tribe which, however, voted approval by a small margin. In other tribes, approval was by large margins. The Commission then held hearings on a motion for entry of final judgment on the above dockets and on July 20, 1964, approved the settlement and with extensive findings of fact issued a final judgment. 13 Ind.Cl.Comm. 369. The judgment was reported to Congress and sums were appropriated for the payment of the judgment. Act of October 7, 1964, 78 Stat. 1033.

Petitioner Andrade asserts that the United States had at the time of the above proceedings and continues to have a fiduciary duty toward him because he is an Indian and specifically as the result of the Treaty of Guadalupe Hidalgo, 9 Stat. 922, February 2, 1848. Petitioner alleges that the United States breached its duty by allowing attorneys from the Department of Justice to mislead the Indians as to the value of the land at issue in the above settlement and as to the operation of the settlement.

Petitioner also views the approval by the Secretary of the Interior of the Indians' attorneys as a warranty of their good faith efforts on behalf of their Indian clients. We are told that, in fact, these attorneys worked to their clients disadvantage by seeking the above settlement and by misleading the Indians into accepting it. Finally, petitioner alleges that the Indian Claims Commission failed in its duty under the Indian Claims Commission Act to properly oversee the settlement of the dockets. Petitioner avers that there were irregularities in the voting procedures, that there was insufficient notice of the hearings on the proposed settlement, and points to what he alleges to be excessive legal fees awarded by the Commission to the Indian attorneys as evidence of a breach of the Commission's duty.

Petitioner Pitt River Tribe makes a number of the same assertions made in the Andrade petition. We are told that the attorneys for the United States misled the Indians as to the value of the property in question and that the BIA and the Commission failed to assure that the Indians understood what the settlement offered and how it would operate. The Pitt River petition goes on to describe with particularity how attorneys for the United States misled the Indians as to the amount of money each individual Indian would receive, and the great saving in time which a settlement would permit as compared to further litigation. We are also told that the election procedure was subverted by the attorneys for the Indians presenting a series of reports biased in favor of the settlement, by the BIA sending out misleading information about the settlement as well as allowing too many mail ballots to be used, and by the Commission allowing the election procedures to be changed to include a mail ballot after a vote by the Pitt River Tribe had negatived the settlement. The petitioner asserts that the hearings on the proposed settlement were not conducted fairly. Because the petitioner was denied the right by the BIA to fire its original attorney and hire the attorney of its choice, it alleges that it was unable to oppose the settlement successfully, and that it was specifically denied the right to cross-examine those who spoke in favor of the settlement. Since it was allegedly tied to an attorney who was not working in its best interest we are told that petitioner was unable to challenge the proposed settlement at the Commission or to seek to overturn it in this court. In fact it was only when the present attorneys for the petitioner agreed to seek relief, without compensation, that the Pitt River Tribe could attempt to challenge the settlement. Finally we are told that under the circumstances the fees allowed to the attorneys involved in the settlement were exorbitant, and were awarded from the settlement without any notice to, or opportunity for comment by, the Indians.

Related to the settlement but not tied to its being overturned are two other claims of the Pitt River petitioner. We are told that those Indians who voted on the proposed settlement were led to believe that they would each receive a portion of the settlement based upon the Roll of 1928. This relatively large share of the total was allegedly an important factor in the settlement gaining acceptance. However, after the settlement, Congress established a new Roll which included more persons to share in the settlement. Act of September 21, 1968, 82 Stat. 860. This action by Congress was, we are told contrary to explicit promises made by Government Agents prior to the voting on the settlement and operated to divest the Indians of their proper share of the settlement. The above Act also provided that funds from the settlement should be used to make up the new Roll. The deduction from the settlement of the alleged amount of $475,000 to pay for the Roll is challenged as never having been agreed to either in the settlement nor anywhere else, and as being a taking without compensation. These last claims will be dealt with separately.

Defendant asserts in its motions for summary judgment that this court lacks jurisdiction under the Tucker Act and 28 U.S.C. § 1505 to entertain these petitions. Even if the court did have jurisdiction over the claims made, we are told, they would be barred by the six year statute of limitations and/or by *res judicata*. For purposes of these cases, we do not accept defendant's first contention as to the jurisdiction of the court. We agree with certain exceptions with defendant's second contention, and therefore hold that petitioners' claims must be dismissed.

Whether or not this court can entertain these petitions in their attack on the Commission judgment raises the question of the extent of our authority to entertain an "independent action" to reopen the case, under Rule 152(b). Petitioners' claims would normally be barred by *res judicata* and by 25 U.S.C. § 70u, which establishes a final determination of the Commission, filed with the Congress, as having the same effect as a final judgment of this court. Assiniboine Tribe v. United States, 121 F. Supp. 906, 913, 128 Ct.Cl. 617, 633, cert. denied, 348 U.S. 863, 75 S.Ct. 88, 99 L. Ed. 680 (1954). The only possible loophole through which petitioners can now get into court is under the provisions of Rule 152(b). This Rule is identical to Rule 60(b) of the Federal Rules of Civil Procedure. As explained in 7 Moore's Federal Practice, § 60.18[8] :

> \* \* \* Two types of procedure to obtain relief from final judgments are specified in amended 60(b). One procedure is by motion in the court and in the action in which the judgment was rendered. The other procedure is by a new or *independent* action to obtain relief from the judgment, which action need not necessarily be commenced in the court which rendered the judgment.

After providing for reopening cases within one year for mistake, newly discovered evidence or fraud, or within a reasonable time for "any other reason justifying relief", the Rule states:

> \* \* \* This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. \* \* \*

As made clear from the above paragraph in Moore's it is under this last clause of the Rule that the petitioners must seek relief. For convenience, we refer to the action as under Rule 152(b) though technically the languge shows the Rule does not purport to confer jurisdiction, but only to reaffirm the continued existence of a form of relief that existed previously.

Defendant invites the court's attention to Carney v. United States, 462 F.2d 1142, 199 Ct.Cl. 160 (1972). In that case we held that we could not, under Rule 152, reopen a judgment of a United States District Court, though referring to instances when we had reopened our own decisions. We stated that a court entertaining an independent action to reconsider a suit in a District Court must be one having equity jurisdiction and must have had jurisdiction over the subject matter, had there been no previous judgment. For the purposes of these cases, we assume without deciding that under 28 U.S.C. § 1505 we can nevertheless entertain an independent action by a tribe to reconsider a judgment of the Commission, and one by Indian individuals under § 1491 as construed in Hebah v. United States, 428 F.2d 1334, 192 Ct.Cl. 785 (1970).

Plaintiffs have not helped us much in determining whether *Carney* is fatal to their claims. Our own reasoning tells us the matter is not free from doubt. It must be remembered that the Commission was expected to have a relatively short life. It would not have been able to reopen its own judgments after it had ceased to exist, when it was discovered that such judgments should be overturned, for, *e. g.*, fraud on the Commission. It is arguable that Congress in-

tended this court to perform that function, since to assume otherwise would be to make Rule 152(b) relief unavailable to Indian litigants. Such a result would depend also on Section 70u of the 1946 Act. Under that Section of the Act, a judgment of the Commission when reported to Congress shall have the effect of a final judgment of this court. Since we could reopen our own judgment, it might follow we could reopen a judgment which has the effect of one of ours.

The second requirement set out in *Carney* is that the court entertaining the "independent action" must have jurisdiction over the subject matter apart from the bar of former adjudication. Under 28 U.S.C. § 1505 this court can entertain actions brought by Indian tribes for claims which accrued after 1946. Activity which would render a judgment of the Commission subject to attack on the grounds spelled out in Rule 152(b) would necessarily have taken place after 1946. As stated in *Hebah, supra,* 1949 would be the earliest date for individual claims.

If we reason that we can entertain an action under the independent action clause of Rule 152(b), that does not dispose of the cases before us. The operation of the Rule requires that the moving party act with diligence. Though there is no express time requirement in connection with an "independent action", the doctrine of laches applies. Precisely how gingerly a court should proceed when entertaining an independent action to set aside a judgment is expressed in 7 Moore's Federal Practice, § 60.37[1]:

> Under circumstances which render it manifestly unconscionable that a judgment be given effect, an independent action will lie to enjoin its enforcement because of newly discovered evidence; but properly the rules which limit equitable interference on this ground are stringent.[53] And certainly the finality of judgments will not admit of an action to impeach a prior judgment merely because it was against the weight of the evidence,[54]

or because the judgment is thought to be unjust, erroneous, and contrary to that which the court in which the independent action is instituted might have reached.[55]

> An independent action will not lie merely because the trial court failed to follow the instructions of the appellate tribunal.[56] Nor can it be successfully maintained where the present complainant negligently failed to press the matter in the original action;[57] or where he is guilty of laches in seeking relief from the original judgment.[58] Ordinarily a party seeking to impeach a judgment must make a showing that the merits lie with him.[59] And a court should not disturb rights of third persons vested or acquired in good faith reliance upon the judgment.[60] (Footnotes omitted.)

■ Turning first to the question of the timeliness of these suits, they appear to be barred by the statute of limitations, 28 U.S.C. § 2501, and by laches. All of the challenged events with the exception of one, which will be dealt with below, took place on or before 1964. According to Japanese War Notes Claimants Ass'n v. United States, 373 F.2d 356, 178 Ct.Cl. 630, cert. denied, 389 U. S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), the statute is tolled only if defendant concealed the cause of action and plaintiff was not aware of facts to put it on notice. Except as set forth hereinafter, whatever malfeasance petitioners know of now, they knew on July 20, or October 7, 1964. No adequate excuse for eight years of inaction is offered. If they are lawfully in court now, they could have been here then. Capoeman v. United States, 440 F.2d 1002, 194 Ct.Cl. 664 (1971). Thus lack of counsel cannot excuse the eight years of delay.

■ As to the specific allegations made in the petitions, we find them anyway insufficient to support action by this court under Rule 152(b). Both petitioners allege that attorneys for the defendant acted in bad faith during the

negotiations for the settlement. The ICC Act clearly contemplates an adversary proceeding. The Government attorneys in presenting the facts in a light which favored their client's position were acting properly in their capacities assigned them under the Act. They had no duty to point out court precedents favorable to the Indians and acted properly in attempting to get a settlement at a low cost to their client. The Indians had their own able counsel.

Both petitioners challenge the activities of those Government officials who supervised the voting on the proposed settlement. In response, defendant has placed before the court the extensive findings developed in this case by the Indian Claims Commission. These findings indicate a most careful inquiry by the Commission into the circumstances of the settlement, as was natural and prudent in view of the vociferous opposition. Government officials involved acted so as to assure a fair hearing and an unbiased vote on the proposed settlement. The findings indicated that at the meetings preceding the voting, both those who favored the settlement and those who opposed it were given ample opportunity to state their positions. We are told in the findings that the attorneys for the Indians gave a fair and unbiased appraisal of the proposed settlement. Decisions as to the operation of the vote, specifically the inclusion of mail ballots, in some cases, were apparently made in the desire to give all eligible Indians a chance to state their assent or opposition to the settlement. The hearings after the vote, according to the findings were handled in such a manner as to give all sides a fair opportunity to be heard. It is true that the above referred to findings were developed by the ICC, a body whose actions are being challenged. However, in the face of those findings the burden is on the petitioners to come forward with a specific prima facie case of wrongdoing. This they have failed to do. The ICC therefore benefits from the usual presumption that Government officials' actions are proper and lawful.

Finally, the activities of the Indians' lawyers are challenged. Again, the Commission's findings controvert these challenges. According to the findings, the attorneys involved gave a fair account of the proposed settlement prior to the votes being taken. Certain of the attorneys asked that mail ballots be used, but they did so only on the basis of the alleged best interest of their clients. While certain of the Pitt River petitioners attempted unsuccessfully to dismiss the Tribe's attorney and to replace him with another, the record indicates that these Indians had no standing to represent the Tribe in such a matter. The petitioners' complaints point up an area of possible conflict of interest on the part of an attorney who is handling a case that will take years to try and sees the possibility of an immediate settlement. The conflict may well exist, but there are safeguards, (here a vote by the Indians and under ICC supervision) designed to protect the clients' interests. Petitioners fail to show, in the face of the Commission's findings, that those safeguards did not operate.

Since petitioners have not met the requirements of a successful challenge to a judgment under Rule 152 as spelled out in Moore's, either in terms of timeliness or as to unconscionability, their claims as to the 1964 judgment of the Commission must fail.

■ Petitioner Pitt River Tribe also raises a challenge to the 1968 Act which set up the Roll of the Indians who would be able to share in the settlement and provided that the cost of establishing that Roll would be subtracted from the settlement sum. They also claim damages resulting from the delay in payment caused by the making of the Roll. These claims unlike the ones above are not barred by the statute of limitations or by laches. They are also not claims for relief under Rule 152(b). They are claims which, if this court has jurisdiction over them at all, come under 28 U. S.C. § 1505.

These latter claims were not extensively briefed by the Pitt River petitioner. In response to them, defendant invites the court's attention to a series of cases which speak of the extensive powers of Congress in making up Rolls and in appropriating sums of money to pay Indian tribal claims. In view of the powers of Congress in the area, this attack on its constitutional right to do what it did would have to rest on clearcut grounds unknown to us and not stated by petitioner. In light of the lack of an adequate exposition of these claims we dismiss them without prejudice, and without comment as to their merit.

Petitioners' claims attacking the 1964 judgment of the Indian Claims Commission are dismissed. Defendant's motions as to these claims are granted. Petitioner Pitt River Tribe's claim as to the 1968 Act of Congress is dismissed without prejudice.