The SIX NATIONS CONFEDERACY,
Plaintiff,

v.

Cecil ANDRUS et al., Defendants.

Civ. A. No. 77–515.

United States District Court,
District of Columbia.

July 12, 1977.

Robert T. Coulter, Institute for the Development of Indian Law, Washington, D. C., for plaintiff.

Dean K. Dunsmore, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

In this action for declaratory and injunctive relief, plaintiff challenges the constitutionality of the procedures of the Indian Claims Commission under the Act of August 13, 1946, ch. 959, 60 Stat. 1049, 25 U.S.C. § 70 *et seq.*, and in particular, the validity of the judgment entered by the Indian Claims Commission in Docket No. 84, *Six Nations, et al v. United States*, 23 Ind. Cl.Comm. 376 (1970).

█ This Court has jurisdiction pursuant to 28 U.S.C. § 1331.[1]

This matter first came before the Court on plaintiff's motion for a temporary restraining order which was denied in an order dated May 4, 1977. It is currently before the Court on plaintiff's motion for preliminary injunction seeking to enjoin defendants from paying any moneys awarded by the Indian Claims Commission in Docket No. 84. Defendants have filed a motion to dismiss for want of subject matter jurisdiction; for failure to state a claim upon which relief can be granted; and for failure to join indispensable parties under Rule 19.

On May 26, 1977, a hearing was held on plaintiff's motion for a preliminary injunction and testimony was taken from three of plaintiff's witnesses. The Court subsequently afforded plaintiff the opportunity to further brief the issues raised by its motion for preliminary injunction and to reply to defendants' motion to dismiss. De-

fendants filed a reply to plaintiff's submissions.

The background of plaintiff's claim is briefly as follows: Plaintiff Six Nations is a confederacy composed of the Onondaga, Seneca, Mohawk, Oneida, Cayuga and Tuscarora Nations. Docket No. 84 originated with the filing of a petition on or about December 11, 1950, by the Seneca Nation, the Seneca-Cayuga Tribe of Oklahoma, the Tuscarora Nation, the Oneida Tribe of Wisconsin and several named individuals on behalf of the respective tribes forming the Six Nations and allegedly on behalf of the Six Nations itself. Plaintiff in the instant case contends that these persons acted without authority of the Grand Council which has the responsibility for making policy and determining who will represent the Six Nations in its affairs.[2]

In Docket No. 84, it was alleged that the United States had not fulfilled its obligations under some 21 enumerated treaties and a judgment and accounting were sought. During the course of the proceedings, the petitioners therein limited their claims to alleged deficiencies under only two of the treaties.[3] An interlocutory order of liability was entered in favor of the petitioners in Docket No. 84 consolidated with Docket No. 300–B brought by the Stockbridge-Munsee Community on August 11, 1970. *Six Nations, et al v. United States, supra.* A final award, following proceedings related to setoffs claimed by the United States, was entered on December 28, 1973 in the amount of $29,930.25 in favor of the petitioners in Dockets 84 and

---

1. Defendants in their motion to dismiss and in their other responses to plaintiff's motions allege that the Court lacks jurisdiction because it has failed to show that the United States waived sovereign immunity. The Court rejects this contention since plaintiff challenges the constitutionality of the statute under which Docket No. 84 was filed and alleges that defendants acted in violation of the Constitution in processing Docket No. 84 before the Indian Claims Commission. Thus, this case falls within one of the exceptions to the doctrine of sovereign immunity. *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

2. The Commission made a finding that "all of the plaintiffs enumerated in the caption of these suits are the tribes or bands or the successors in interest to the tribes or bands who participated in the various agreements which form the basis for the claims herein and that they have the right and capacity under the Indian Claims Commission Act to bring and maintain these accounting actions on their own behalf or through proper representatives." *Six Nations, et al v. United States, supra.*

3. These were the treaties of 1792 and 1794.

300–B, and in addition, an amount of $25,-399.50 was awarded separately in favor of the Seneca Nation of Indians. *Six Nations, et al v. United States*, 32 Ind.Cl.Comm. 440, 460 (1973).

The final award as entered by the Commission was reported to Congress by letter from the Chairman of the Indian Claims Commission dated March 29, 1974. Notification of this report to Congress was published in the *Congressional Record* on April 3, 1974, and April 9, 1974. 120 Cong.Rec. 9630, 10249. The funds to pay the judgment entered were appropriated by Congress, Act of December 27, 1974, Pub.L. No. 93–554, 88 Stat. 1771, 1782, and immediately thereafter, the $29,930.25 was placed in Account No. 14x9426 to the credit of the petitioners in Docket No. 84.[4]

Chief Leon Shenandoah, Fire Keeper or head of the plaintiff Six Nations Confederacy, testified that he received the first formal notice of the award made in Docket No. 84 and of a hearing to be held concerning disposition of the award on July 23, 1975.[5] He responded with a letter to the President of the United States. An exchange of correspondence and meetings between plaintiff and the Department of the Interior followed. One such letter from the Under Secretary of the Interior indicated that only the governing bodies of the successor (modern day) tribes, defined by plaintiff as those tribes governed by an elective system and not the Grand Council, could or should represent the members of the respective tribes.[6] Plaintiff continued to maintain that none of the petitioners in Docket No. 84 were authorized to represent the Six Nations. However, plaintiff made no attempt to appear at the hearings on disposition of the award in order to make its position known to the Indian Claims Commission.

On September 21, 1976, pursuant to the Act of October 19, 1973, Pub.L. No. 93–134, 87 Stat. 466, 25 U.S.C. § 1401, *et seq.*, the Department of the Interior submitted a plan to Congress for the distribution of the judgment funds. 42 Fed.Reg. 21665. Notice of the receipt of this plan was published in the *Congressional Record*. 122 Cong. Rec.H. 11031 (Daily Ed. Sept. 23, 1976); 122 Cong.Rec.S. 17071 (Daily Ed. Sept. 29, 1976). When neither House of Congress passed a resolution disapproving the plan so submitted, the plan of distribution became effective on March 4, 1977. 25 U.S.C. § 1405; 42 Fed.Reg. 21665 (1977). Plaintiff now seeks to enjoin any further distribution of the funds for petitioners in Docket No. 84, alleging that the payment of the award will irreparably injure plaintiff by impairing or even barring its rights under the treaties involved in Docket No. 84 without due process of law in violation of the Fifth Amendment to the United States Constitution. In the alternative, plaintiff seeks a determination by this Court that any judgment or award in Docket No. 84 is not binding upon its rights, such determination to be without prejudice to its right to receive a share of any monetary award that is made pursuant to Docket No. 84, or that Docket No. 84 should be remanded to the Indian Claims Commission to permit plaintiff a reasonable opportunity to petition for leave to intervene.

Defendants in their response to plaintiff's motion and in their motion to dismiss contend that any irreparable harm has already occurred since any possible bar against the presentation of further claims which plaintiff seeks to avoid is in effect, and therefore this action is moot. 25 U.S.C. § 70u states:

---

**4.** Said funds were invested in certificates of deposit which will mature July 12–14, 1977.

**5.** The attorneys who represented petitioners in Docket No. 84 had contacted plaintiff prior to December 1950 and sought to represent it in the matter before the Indian Claims Commission. However, the record indicates that plaintiff herein allegedly denied them the authority to file the claim on its behalf.

**6.** It should be noted that on November 22, 1974, the Department of the Interior had also sent a letter concerning an unrelated matter to the Chiefs of the Six Nations and addressed it to Chief Shenandoah. Plaintiff contends that this is indicative of defendants' recognition of plaintiff as the authorized representative of the Six Nations.

(a) When the report of the Commission determining any claimant to be entitled to recover has been filed with Congress, such report shall have the effect of a final judgment of the Court of Claims, and there is hereby authorized to be appropriated such sums as are necessary to pay the final determination of the Commission.

The payment of any claim, after its determination in accordance with this Act, shall be a full discharge of the United States of all claims and demands touching any of the matters involved in the controversy.

The report referred to is that required by 25 U.S.C. § 70t:

In each claim, after the proceedings have been finally concluded, the Commission shall promptly submit its report to Congress.

The report to Congress shall contain (1) the final determination of the Commission; (2) a transcript of the proceedings or judgment upon review, if any, with the instructions of the Court of Claims; and (3) a statement of how each Commissioner voted upon the final determination of the claim.

The Court has given considerable thought to the testimony and evidence presented concerning the dispute over who is the lawful representative of the Six Nations; plaintiff's failure to intervene in Docket No. 84 before the Indian Claims Commission allegedly due to lack of notice before final judgment; and plaintiff's efforts to preserve its Indian customs and traditions, including its unique communications system and its form of government. Plaintiff should not be penalized for following the ways of its ancestors. However, the only matter before the Court at this time is whether defendants can be enjoined at this stage of the proceedings from concluding a matter begun nearly 27 years ago.

As indicated previously, the final award in Docket No. 84 was reported to Congress on March 29, 1974 and notification thereof was published in the *Congressional Record* on April 3 and April 9, 1974. This has "the effect of a final judgment of the Court of Claims", 25 U.S.C. § 70u, which this Court cannot set aside. Accordingly, plaintiff's motion for preliminary injunction must be denied, and the Court grants defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

Plaintiff, in the alternative, seeks to reap its share of the pending award in Docket No. 84 at the same time it seeks a determination that Docket No. 84 will not preclude it from attempting to vindicate other treaty rights which it may or may not have in an undefined forum at an undefined time against unidentified parties. This Court cannot determine nor can it predict what effect the award in Docket No. 84 will have on any subsequent actions which plaintiff may decide to bring, if indeed it eventually determines it has a cause of action under one of the other treaties.

Plaintiff alleges that the time bar of 25 U.S.C. § 70k, which states:

The Commission shall receive claims for a period of five years after August 13, 1946, and no claim existing before such date but not presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress,

will not preclude it from pursuing numerous other alternatives for relief. Since plaintiff's primary concern appears to be those treaties which petitioners in Docket No. 84 chose not to contest and which were therefore not actually litigated in that proceeding, arguably plaintiff will not be precluded from pursuing any alleged rights derived from them since ". . . an issue determined by stipulation in one suit should not be conclusively established in a subsequent suit on a different cause of action unless it is clear that the parties so intended. An issue resolved by stipulation is neither litigated nor determined by the Court in the sense that the doctrine of collateral estoppel normally requires." 1B Moore's Federal Practice § 0.444[4], at 4029.

**44**

■ Finally, plaintiff's request that Docket No. 84 be remanded to the Indian Claims Commission to permit plaintiff to petition for leave to intervene is now moot in view of this Court's determination that a final judgment has already been entered.[7]

The Court need not address the remaining contentions by either of the parties. An appropriate order denying plaintiff's motion for a preliminary injunction and granting defendants' motion to dismiss for failure to state a claim upon which relief can be granted accompanies this Memorandum Opinion.

---

7. Plaintiff may have grounds for instituting an independent action in the Court of Claims seeking to overturn the judgment of the Indian Claims Commission in Docket No. 84 if it can convince the Court of Claims that it was, as alleged herein, not aware of the filing of the claim until 1975. See, *Andrade v. United States*, 485 F.2d 660, 202 Ct.Cl. 988 (1973).