**A. Wallace TASHIMA, United States District Judge, Petitioner/Plaintiff,**

v.

**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS; L. Ralph Mecham, Director, Respondents/Defendants.**

**No. CV–88–4582 SAW.**

United States District Court,
C.D. California.

June 7, 1989.

Christopher Caldwell, Hedges, Powe & Caldwell, Los Angeles, Cal., for petitioner/plaintiff.

Eric Segal, Dept. of Justice, Civ. Div., Washington, D.C., for respondents/defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Petitioner/plaintiff, the Honorable A. Wallace Tashima, United States district judge in the Central District of California (petitioner), brings this action to compel respondents/defendants, Administrative Office of the United States Courts and L. Ralph Mecham, Director (respondents or Administrative Office), to authorize payment for his private counsel in two lawsuits. The parties have filed cross-motions for summary judgment.

### I. Background.

Petitioner has been named a defendant in two actions challenging the constitutionality of Local Rule 2.2.1 [1], promulgated by the United States District Court for the Central District of California (the Central District). In November, 1987, in *Maynard v. United*

---

1. The Local Rule restricts admission to practice to persons of good moral character who are members of the California State Bar.

*States District Court for the Central District of California,* 701 F.Supp. 738 (C.D. Cal.1988) (*Maynard*), the Central District and each of its judges, including petitioner, were named as defendants in their respective official capacities. In March, 1988, petitioner and the other Central District judges were likewise named as defendants in a separate action, *Giannini v. Real,* 711 F.Supp. 992 (C.D.Cal.1989) (*Giannini*).

In *Maynard,* at the request of the Chief Judge of the Central District, respondents recommended to the United States Department of Justice that legal representation be provided to the Central District and its judges. The Department of Justice authorized the United States Attorney's Office for the Central District of California to provide representation.

On February 24, 1988, petitioner wrote to respondents requesting that they approve his retention of separate counsel in *Maynard* at Administrative Office expense. He made the request because, unlike the other defendants, he did not favor upholding the challenged local rule.[2]

On March 21, 1988, respondents denied petitioner's request. By letter dated April 27, 1988, respondents also denied petitioner's request for reconsideration. Respondents stated that the *Maynard* lawsuit "does not challenge any action by Judge Tashima individually but instead challenges the collective actions of the court of which Judge Tashima is a member." Further, respondents noted that petitioner faces no individual liability. Respondents concluded that "the Administrative Office ... is not obliged to authorize payment of separate counsel so that Judge Tashima may advocate his personal views, especially views that are in the nature of an individual dissent." Letter of April 27, 1988.

Meanwhile, in *Giannini,* again at the request of the Chief Judge of the Central District, respondents recommended to the Department of Justice that representation be provided to all defendants, except petitioner. Representation was authorized.

On June 1, 1988, petitioner wrote requesting private representation at Administrative Office expense in *Giannini* because he wanted to take the same position he had taken in *Maynard.* Several weeks later, after being served with discovery requests from plaintiff in *Giannini,* petitioner mailed a supplemental request to respondents. On June 27, 1988, respondents wrote to petitioner denying both requests. Respondents acknowledged that representation was being provided by the Department of Justice to the other judges named as defendants in *Giannini.* Respondents, however, refused petitioner's request, stating the same reasons given in *Maynard,* i.e., that "payment of private counsel to advocate the separate, dissenting views of an individual judge in an action that neither seeks nor can obtain relief from the judge individually is not ... appropriate". Letter of June 27, 1988.

On November 3, 1988, petitioner wrote respondents to ask that they submit a request for representation on his behalf directly to the Department of Justice. Letter of November 3, 1988. Respondents submitted petitioner's request with a recommendation that "the Department of Justice provide representation to the extent consistent with the best interests of the United States." Letter of December 16, 1988. Respondents noted that "any acts or omissions on the part of Judge Tashima that may be relevant to this complaint would have occurred in the discharge of his official duties." *Id.* Nevertheless, respondents submitted "we do not believe it would be in the best interests of the United States to represent Judge Tashima in seeking to overturn or amend the [local] rules." *Id.*

The Department of Justice declined to represent petitioner. Letter of January 26, 1989. Subsequently, respondents authorized payment for petitioner's private counsel in *Maynard* and *Giannini* "for the limited purpose of seeking to achieve [petitioner's] dismissal from the case." Letters

---

**2.** Petitioner advocates amending the local rule rather than defending its constitutionality. He contends the existing rule violates notions of

right and justice. *See Frazier v. Heebe,* 482 U.S. 641, 645–46, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987).

of February 8, 1989 and March 20, 1989. Respondents stated "we believe that it would be inappropriate for the Administrative Office to pay private counsel to advocate a position on behalf of an individual judge that squarely conflicts with the position of the court that has exclusive authority to promulgate or modify the [local] rule." Letter of February 8, 1989. Respondents thus concluded that "this authorization does not extend to the payment of private counsel to represent [petitioner] in challenging the local rule in question, whether the challenge is framed in terms of the rule's constitutionality or in terms of some other asserted invalidity." Letter of March 20, 1989; *see also* Letter of February 8, 1989.

Meanwhile, on July 28, 1988, petitioner filed this action alleging that respondents have a duty under 28 U.S.C. § 463[3] to authorize the retention of private counsel for petitioner at government expense in the *Maynard* and *Giannini* actions. Petitioner claims that respondents' refusal to authorize such payment—while at the same time recommending to the Justice Department that all other defendants in *Maynard* and *Giannini* be represented at government expense—is arbitrary, capricious, an abuse of discretion, in excess of respondents' statutory authority and contrary to respondents' constitutional powers. Petitioner contends also that no judicial power is vested in respondents and that the authorization of payment for private counsel for the limited purpose of effecting petitioner's dismissal from *Maynard* and *Giannini* was a judicial determination.

Petitioner seeks (1) a writ of mandamus, (2) relief under the Administrative Procedure Act (APA), and (3) declaratory relief.

The Court concludes that petitioner is not entitled to a writ of mandamus nor to relief under the APA but is entitled to declaratory relief because respondents have exercised their discretion under 28 U.S.C. § 463 in a manner exceeding constitutional limits.

## II. Writ of Mandamus.

Mandamus is a drastic remedy to be invoked only in extraordinary circumstances. *Armster v. United States District Court*, 792 F.2d 1423, 1431 (9th Cir.1986), *motion to vacate denied*, 817 F.2d 480 (9th Cir. 1987) (citing *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976)). Mandamus will issue "only to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, — U.S. ——, 109 S.Ct. 414, 424, 102 L.Ed.2d 408 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984)). It "does not lie to review the discretionary acts of officials." *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir.1983) (*quoting Nelson v. Kleppe* 457 F.Supp. 5, 8 (D.Idaho 1976), *aff'd sub nom., Nelson v. Andrus*, 591 F.2d 1265 (9th Cir. 1978)).

The Ninth Circuit has delineated standards governing the availability of mandamus to compel an official of the United States to perform a duty. The writ may be issued only if (1) the plaintiff's claim is clear and certain, (2) the official's duty is "ministerial and so plainly prescribed as to be free from doubt", and (3) no other adequate remedy is available. *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3264, 97 L.Ed.2d 763 (1987) (*quoting Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)).

■ Respondents' duty to authorize payment for petitioner's private counsel cannot be regarded as "so plainly prescribed as to be free from doubt." *Azurin*, 803 F.2d at 995.

The starting point for interpreting a statute is the language of the statute itself. *Consumer Product Safety Commission v.*

---

**3.** 28 U.S.C. § 463 provides:

Whenever, a ... judge ... is sued in his official capacity, or is otherwise required to defend acts taken or omissions made in his official capacity, and the services of an attorney for the Government are not reasonably available pursuant to chapter 31 of this title, the Director of the Administrative Office of the United States Courts may pay the costs of his defense. The Director shall prescribe regulations for such payments subject to the approval of the Judicial Conference of the United States.

*GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Nothing in the language of 28 U.S.C. § 463 creates a plainly prescribed duty that respondents authorize payment for a judge's private counsel when he is sued in his official capacity. Instead, section 463 provides that whenever a judge is sued in his official capacity, respondents *"may* pay the costs of his defense" (emphasis added).

Nothing in the legislative history of section 463 indicates that Congress intended a plainly prescribed duty on respondents' part. *See* S.Rep. No. 97–275, 97th Cong., 2nd Sess. (1982), *reprinted in,* 1982 U.S. Code Cong. & Admin.News 11, 25–26. Moreover, the regulations issued pursuant to section 463 do not narrow the discretion vested in respondents. *See* Section III of the *Guide to Judiciary Policies,* Volume 1–C, Chapter XI, Part E. The regulations provide that the Director of the Administrative Office "shall ... consider the exercise of his authority under 28 U.S.C. § 463 to pay the costs of such legal defense by private counsel." *Id.* at ¶ 3.1. The regulations state also that the Director's determination shall be guided by the decision of the Comptroller General of the United States, No. B–178360, October 31, 1973, published at 53 Comp.Gen. 301 (1973). That decision, however, does not confine respondents' discretion to a plainly prescribed duty. Rather, it recommends that respondents, and not the judicial officer or body involved in a case, should make an "independent determination" about the necessity for using appropriated funds of the Judiciary to pay for a judge's private counsel. *Id.* at 8.

By way of limitation, the Comptroller General's decision instructs that respondents should consider if the representation is in the best interests of the United States and necessary to "protect the judiciary's interest in the outcome of the subject litigation." *Id.* These directives, however, do not describe a prescribed duty, free from doubt, that respondents must pay for a judge's private counsel whenever he is sued in his official capacity. *See Azurin,* 803 F.2d 995–999. Nor does the Comptroller General's decision, the regulations or

the statute delineate, as petitioner argues, that respondents possess no discretion to determine that some judges, but not all, are entitled to representation at government expense.

Petitioner, nonetheless, claims that respondents should be bound by their own interpretation of section 463. In a Memorandum of March 7, 1988, prepared by the Administrative Office's General Counsel and sent to all United States judges, respondents advised that

> "judicial officers and employees are *entitled* to representation at the expense of the Government when they are sued or otherwise required to defend actions taken in their judicial or official capacity."

Memorandum of March 7, 1988, at 5 (emphasis added).

Although the Memorandum contains this language pertaining to the right of judges to obtain legal representation at government expense, the Memorandum taken as a whole indicates that respondents retain discretion to decide when payment for a judge's private counsel is appropriate. The paragraph immediately following the above quotation refers to the regulations providing for discretion as discussed above. Further, the next succeeding paragraph reiterates that

> "[t]he Office of the General Counsel reviews requests for representation and transmits them to the Department of Justice with an appropriate recommendation.... Where the Department of Justice is unavailable to provide representation because of a conflict of interest ... the Administrative Office *may* authorize representation by private counsel at Government expense under 28 U.S.C. § 463...."

*Id.* at 5 (emphasis added).

Indeed, in light of the regulations which provide for respondents' discretion in deciding whether to authorize payment for private counsel, petitioner cannot rely on the Memorandum to show otherwise. *See Heckler v. Chaney,* 470 U.S. 821, 836, 105 S.Ct. 1649, 1658, 84 L.Ed.2d 714 (1984) (plaintiffs could not rely on the agency's

informal "policy statement", which was inconsistent with the agency's regulations, to override the regulations and establish a limitation on the agency's enforcement discretion).

For mandamus to issue the focus must be on whether respondents had a ministerial duty so plainly prescribed as to be free from doubt. Under this standard, petitioner's request for mandamus relief must be denied.

### III. Relief Under The Administrative Procedure Act.

Petitioner contends that respondents' authorization of payment for private counsel for the limited purpose of effecting petitioner's dismissal from *Maynard* and *Giannini* is arbitrary, capricious and an abuse of discretion under the review provisions of the APA, 5 U.S.C. § 701.

The threshold question is whether the Administrative Office of the United States Courts is an "agency" bound by relevant provisions of the APA.

The APA defines the term "agency" as not including the "courts of the United States". 5 U.S.C. § 701(b)(1)(B). After a thorough review of the legislative history of the APA, the court in *In re Fidelity Mortgage Investors*, 690 F.2d 35 (2d Cir. 1982), *cert denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983), concluded that "[i]f legislative history has any significance at all, it is clear that Congress intended the entire judicial branch of the Government to be excluded from the provisions of the Administrative Procedure Act." [4] *Id.* (citing *Wacker v. Bisson*, 348 F.2d 602, 608 n. 18 (5th Cir.1965); *see also Seltzer v. Foley*, 502 F.Supp. 600, 602 n. 2 (S.D.N.Y.1980). The court held that the APA does not apply to the Judicial Conference of the United States when it is acting as an auxiliary of the courts, because it falls within the definition of "court" as the term is used in the APA. *Fidelity*, 690 F.2d at 39.

Petitioner cites *Goldhaber v. Foley*, 519 F.Supp. 466 (E.D.Pa.1981), in which the court acting under the review provisions of the APA, enjoined the Administrative Office from awarding a court reporting contract to certain defendants. In *Goldhaber*, the court stated that although "the APA does specifically exempt 'the courts of the United States' ", 519 F.Supp. at 480 (*quoting* 5 U.S.C. § 701(b)(1)(B)), nevertheless, "[w]e deem it significant ... that the functions of the [Administrative Office] are more akin to those of an administrative or executive agency than to those of the courts." *Id.* at 480.

■ The *Goldhaber* court, however, did not refer once to the legislative history of the APA in concluding that the APA review provisions apply to the Administrative Office. *Id.* at 480–81. It did not reconcile that portion of the legislative history demonstrating Congressional intention that the term "courts" embraces the entire judicial branch. Based on the analysis in *Fidelity* and a review of the APA's legislative history, the Court concludes that the Administrative Office is not an "agency" within the meaning of the APA. Respondents' decision to authorize only a limited payment for petitioner's private counsel thus is not reviewable under the APA.

### IV. Declaratory Relief.

Petitioner seeks a judicial declaration as to the parties' rights and duties under 28 U.S.C. § 463.

■ Respondents raise two threshold issues which, they contend, preclude the Court from granting petitioner declaratory relief. First, respondents argue the Court lacks jurisdiction. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not create an independent jurisdictional basis for suits in federal court. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74, 70 S.Ct. 876, 878–80, 94 L.Ed.

---

**4.** Respondents are part of the judicial branch. The Director and Deputy Director of the Administrative Office are appointed and subject to removal by the Supreme Court. 28 U.S.C. § 601. They perform functions under the supervision of the Judicial Conference of the United States, *id.* at § 604(a), and duties as the Supreme Court and the Conference shall assign, *id.* at § 604(a)(18).

1194 (1950)). A declaratory judgment suit must conform to traditional jurisdictional requirements, and the Act "merely provides procedural and remedial flexibility to the federal courts." *Geni–Chlor International, Inc. v. Multisonics Development Corporation,* 580 F.2d 981, 984 (9th Cir. 1978).

■ Petitioner, however, has pleaded the existence of a federal question concerning the scope of respondents' duties under 28 U.S.C. § 463, and jurisdiction is proper under 28 U.S.C. § 1331. *See Seltzer,* 502 F.Supp. at 601 (in declaratory judgment action against the Director of the Administrative Office of the United States Courts, plaintiffs' allegations that a government official acted unconstitutionally raised a substantial federal question within the jurisdiction of the federal courts); *Presbyterian Church v. United States,* 870 F.2d 518, 524 (9th Cir.1989) (in action for declaratory relief plaintiffs properly invoked jurisdiction under 28 U.S.C. § 1331 because their claims arose out of the constitution).

■ Second, respondents contend they are immune from suit under the doctrine of sovereign immunity. The Declaratory Judgment Act does not waive the federal government's sovereign immunity. *Smith v. Grimm,* 534 F.2d 1346, 1349 n. 5 (9th Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). However, two exceptions to this immunity are: "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the [statutory] powers themselves or *the manner in which they are exercised are constitutionally void."* *Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 1007, 10 L.Ed.2d 15 (1963) (citing *Malone v. Bowdoin,* 369 U.S. 643, 647, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962)) (emphasis added); *see Guadamuz v. Bowen,* 859 F.2d 762, 767 (9th Cir.1988) (in action for declaratory relief, even when decision is committed to agency discretion by statute, federal courts have jurisdiction to review allegations that agency exceeded its legal authority, failed to follow its regulations, or acted unconstitutionally); *Seltzer,* 502 F.Supp. at 601.

■ Petitioner has alleged that respondents have acted contrary their constitutional powers. The Court finds, for reasons stated below, that respondents exercised their authority under 28 U.S.C. § 463 in a manner infringing constitutional limits. Respondents therefore have no immunity in this action. *See Seltzer,* 502 F.Supp. at 601; *Six Nations Confederacy v. Andrus,* 447 F.Supp. 40, 41 & n. 1 (D.C.D.C.1977), *aff'd,* 610 F.2d 996 (1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980).

■ Petitioner alleges that respondents improperly looked to his views in *Maynard* and *Giannini* to determine whether to pay for his private counsel. The Court agrees. The record is replete with respondents' statements showing they considered petitioner's views on the local rule as a reason to authorize only a limited payment for his private counsel.

Initially, respondents declined to authorize payment for petitioner's private counsel in *Maynard,* stating they are "not obliged to authorize payment of separate counsel so that Judge Tashima may advocate his personal views, especially views that are in the nature of an individual dissent." Then, as to *Giannini,* respondents stated "payment of private counsel to advocate the separate, dissenting views of an individual judge in an action that neither seeks nor can obtain relief from the judge individually is not ... appropriate".

Later, when respondents authorized only a limited payment for private counsel to effect petitioner's dismissal from the suits, respondents stated "we believe that it would be inappropriate for the Administrative Office to pay private counsel to advocate a position on behalf of an individual judge that squarely conflicts with the position of the court that has exclusive authority to promulgate or modify the [local] rule." The limited authorization is itself clear evidence that respondents' decision hinged upon a determination that petitioner's position on the local rule was different from that of the other Central District judges.

Petitioner cites *Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), to support his contention that respondents may not consider his position on the local rule as a reason for refusing to authorize payment. In *Chandler,* a federal judge challenged the power of the Judicial Council for the Tenth Circuit to order that his docket of cases be limited to those filed before a certain date. He claimed that such an order infringed on the constitutional requirement of judicial independence. *Id.* at 84, 90 S.Ct. at 1653. Chief Justice Burger, writing for the plurality decision, noted "[t]here can, of course, be no disagreement among us as to the imperative need for total and absolute independence of judges in deciding cases or in any phase of the decisional function." *Id.*

However, it was Justice Harlan, concurring, who squarely addressed the issue of whether the order of the Judicial Council concerning the judge was beyond its statutory and constitutional authority. Justice Harlan found that the Judicial Council, "when performing its central responsibilities ... exercises judicial power granted under Article III." *Id.* at 110, 90 S.Ct. at 1667. Thus, he could discern "no incursion" against the principle of an independent federal judiciary. *Id.* at 129, 90 S.Ct. at 1676.

In reaching this conclusion, Justice Harlan emphasized the differences between the Judicial Council, composed of active circuit judges, and the Administrative Office. After analyzing the legislative history of the Act of August 7, 1939, 53 Stat. 1223 (the "Act"), which created the Judicial Council and Administrative Office, Justice Harlan found that the *Judicial Council* "was designed as an actual participant in the management of the judicial work of the circuits." *Id.* at 98, 90 S.Ct. at 1661. It acts as a judicial tribunal under Article III when it issues orders to district judges to regulate the exercise of their official duties. *Id.* at 102, 90 S.Ct. at 1662–63.

In contrast, as to the Administrative Office, Justice Harlan found

"[t]he role of the Administrative Office, and its Director, was to be 'administrative' in the narrowest sense of that term. The Director was entrusted with no authority over the performance of judicial business—his role with respect to such business was, and is, merely to collect information for use by the courts themselves."

*Id.* at 97, 90 S.Ct. at 1660. Importantly, Justice Harlan observed that "[i]t seems clear that the sponsors of the [Act] considered the power to give such orders [to district judges] something that could not be entrusted to any purely 'administrative' agency—not even to the Administrative Office, which was to be an arm of the judicial branch of government...." *Id.* at 102, 90 S.Ct. at 1663. Quoting the Senate testimony of Chief Judge Groner of the Court of Appeals for the District of Columbia, a supporter of the Act, Justice Harlan emphasized that the Act was to give the Administrative Office "no 'supervision or control over the exercise of purely judicial duties,' because to grant such power to an administrative officer 'would be to destroy the very fundamentals of our theory of government.'" *Id.* at 97–98, 102, 90 S.Ct. at 1660, 1663 (quoting Hearings on S. 188 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 1st Sess., 12 (1939)).

Respondents argue that *Chandler,* decided 13 years before the enactment of 28 U.S.C. § 463, does not speak to the scope of discretion that Congress provided to respondents in the statute. Justice Harlan's analysis in *Chandler,* however, focuses on constitutional limits to respondents' authority. Based upon Justice Harlan's reasoning, this Court finds that any discretion granted to respondents by Congress under section 463 must be limited so that respondents are not vested with "supervision or control over the exercise of purely judicial duties." *Id.* Respondents cannot exercise their authority under section 463 in a manner that is constitutionally void. *Dugan v. Rank,* 372 U.S. at 621–22, 83 S.Ct. at 1006–07.

Here, respondents admittedly based their decision to authorize only a limited pay-

ment for private counsel upon the fact that petitioner's view of the local rule in *Maynard* and *Giannini* is different from the other judges for the Central District. Respondents, based on their notice of his position, denied him payment for counsel so that he may present his views in those lawsuits. By doing so, respondents have effectively exercised unwarranted control over petitioner's official duties relating to local rules.[5]

Respondents, further, have infringed upon petitioner's judicial independence. They agree to authorize a payment for private counsel only if petitioner agrees to accept representation to effect his dismissal from the suit, but *not to address the merits of the challenge to the local rule.* This limited authorization is a coercive factor undermining petitioner's independent determination as to the appropriate policy for the local rule. If respondents prevail and petitioner wishes to address the merits of the challenged local rule, he will be precluded from receiving payment for private counsel and will have to pay out of his own pocket for judicial consideration of his position—a position not challenged as improper or frivolous.[6]

The Supreme Court has been vigilant against laws that "impermissibly threaten[ ] the institutional integrity of the Judicial Branch." *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 851, 106 S.Ct. 3245, 3257, 92 L.Ed.2d 675 (1986). It has invalidated attempts by Congress to reassign powers vested in the judiciary to other bodies because "such inroads suggest unwarranted encroachments upon the judi-

cial power" of Article III courts, threatening their independence. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 84, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982) (Congress may not confer Article III power on Article I bankruptcy judge). Further, it has recognized that economic factors may work a coercive influence upon a judge's independent thinking. *Id.* at 60, 102 S.Ct. at 2865–66. The Compensation Clause of Article III fundamentally is directed to this point. *Id.* at 59–60, 102 S.Ct. at 2865. The Constitution "commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." *Id.* at 60, 102 S.Ct. at 2866.

Here, the discretion conferred upon respondents by Congress under section 463 must be limited so there is no infringement upon petitioner's judicial independence. The Court, if fairly possible, must construe section 463 in a manner to avoid raising doubts about its constitutionality. *St. Martin Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1980); *Knapp v. Cardwell,* 667 F.2d 1253, 1260 (9th Cir.), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). The proper construction of section 463 precludes respondents from considering a federal judge's position on a local rule as a basis for denying payment for private counsel in an action in which he is joined as defendant in his official capacity.

## V.

Respondents exercised their authority under 28 U.S.C. § 463 in a manner in-

---

**5.** Petitioner's participation in the lawsuits challenging the Central District's local rule is within the scope of his judicial duties. Federal Rule of Civil Procedure 83 provides "[e]ach district court by action of a majority of the judges thereof may ... make and amend rules governing its practice...." Moreover, the Supreme Court has recognized that certain "rulemaking duties" bear a close relation to the central mission of the Judicial Branch and are consonant with the integrity of the Branch. *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 661–62, 102 L.Ed.2d 714 (1989). That Court has held that district courts have authority and discretion to adopt and amend local rules necessary to carry out the conduct of their business. *Frazier,*

482 U.S. at 645, 107 S.Ct. at 2611; *see* 28 U.S.C. §§ 1654, 2071.

**6.** Respondents contend they need not authorize payment for petitioner's counsel because it is the court that has authority to adopt or amend a local rule. However, respondents have ignored the fact that petitioner, as a member of that court, has a right to participate in the formulation of any local rules. Fed.R.Civ.P. 83. Petitioner's view on the local rule may influence the other judges as to what the appropriate rule should be. Insofar as he is joined in his official capacity as a defendant in *Maynard* and *Giannini,* it is perfectly appropriate that he present his view on the local rule in question.

fringing on the constitutional requirement of judicial independence embodied in Article III. The Constitution precludes respondents from exercising any discretion over an issue such as a district judge's position on a local rule when sued in his official capacity.

For all the foregoing reasons, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

(1) Respondents' motion for summary judgment is DENIED.

(2) Respondents shall authorize and provide for reasonable payment for services rendered to Petitioner by independent counsel chosen by him.

(3) Respondents shall pay Petitioner's court costs in this case.

(4) If Petitioner wishes to claim attorneys fees as to this case, he may proceed under 28 U.S.C. § 2412.