Maurice ARMSTER, Josefina Cabrales, Clarence Carnes, William Clark, Nina Gorio, Patricia McCoy, Michael Romberg, Maverick Veasey, Joseph Walters, Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, Respondent,

and

City of Riverside, City of Los Angeles, City of Rialto, Terry Ford, Sherman Block, Sheriff of Los Angeles County, Jeff Launi, Daryl Gates, Police Chief of City of Los Angeles, Robert Evans, Real Parties in Interest.

Celine ROLERSON, Dr. Mark Rolerson, M.D., individually Dr. Mark Rolerson, M.D., as the natural father of Elizabeth Rolerson, a minor, Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA, and the Clerk of the United States District Court for the District of Alaska, Respondents,

Volkswagenwerk A.G., a/k/a Volkswagenwerk Aktiengesellschaft, a foreign corporation and Volkswagen of America, Inc., a New Jersey corporation, Real Parties in Interest.

Nos. 86–7354, 86–7362.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 19, 1986 (No. 86–7354).

Submitted June 19, 1986 (No. 86–7362).

Decided June 26, 1986.

As Amended Sept. 4, 1986.

Stephen Yagman, Marion R. Yagman, Yagman & Yagman, P.C., Los Angeles, Cal., for petitioners in No. 86–7354.

Brian A. Putra, Peterson, Bracelin, Young, Putra, Fletcher & Zeder, Judith E. Bendich, Bendich, Stobaugh & Strong, Seattle, Wash., for petitioners in No. 86–7362.

Douglas Letter, Dept. of Justice, Washington, D.C., for respondent.

## OPINION

Before KOELSCH, Senior Circuit Judge, FERGUSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Petitioners, plaintiffs in civil cases pending before the District Court for the Central District of California and the District Court for the District of Alaska, seek emergency writs of mandamus against those two district courts [1] prohibiting them from suspending civil jury trials because of an alleged insufficiency of funds appropriated for the payment of juror fees. The threatened suspensions were based on advice from the Administrative Office of the United States Courts and the Executive Committee of the Judicial Conference that, as a result of a budgetary crisis, a nationwide suspension of the civil jury trial system was required from June 16, 1986 to October 1, the commencement of the next fiscal year. We have jurisdiction under 28 U.S.C. § 1651 (1982). *See Radio and Television News Ass'n of Southern Cal. v. United States District Court for the Cent. Dist. of Cal.*, 781 F.2d 1443, 1444 (9th Cir.1986). Because of the urgency of the issue presented we held oral argument on the first petition, the one relating to the California cases, three days after it was filed. The Alaska petition was not filed until the day before that oral argument. We now consolidate the two petitions and set forth our decision.

1. Because the petitioners in No. 86–7354 are parties with cases pending before seven different judges of the Central District of California, because they allege that there is an order of the district court as a whole suspending civil jury trials, and because it is necessary at times to discuss the actions taken by specific district judges, we will refer to each district court as a whole as "the district court" and to the individual district judges as "the district judge."

We hold that the nationwide suspension of the civil jury trial system is unconstitutional and that the threatened suspensions of petitioners' jury trials violate their rights under the seventh amendment. We believe, however, that because we explicitly set forth in this opinion the constitutional obligation of district courts to continue, in accordance with their normal and customary practices and procedures, to afford civil jury trials for the remainder of the current fiscal year, it is not necessary, at the present time, for us to issue a writ of mandamus in order to implement our decision.

I

## The Central District of California Cases

Joseph Walters, one of the petitioners, is the plaintiff in a civil suit pending in the Central District of California. Walters made a timely jury trial demand and his case was scheduled to go to trial earlier this Spring. As of Friday, June 13, his case was trailing, pending completion of an ongoing trial before the district judge to whom the case was assigned. Late Friday afternoon, Walters' counsel was informed by the district judge's clerk that because insufficient funds had been appropriated to pay jurors during the current fiscal year, neither the district judge nor any other judge of the Central District would start any new jury trials until after October 1, 1986, the date on which the next fiscal year commences. The other petitioners, all represented by Walters' counsel, also are plaintiffs in cases with civil jury trials scheduled to commence prior to October 1,

including one scheduled for Tuesday, June 17. All the cases are civil rights actions brought under 42 U.S.C. § 1983.

On Sunday afternoon, June 15, Walters and his fellow plaintiffs submitted to the lead judge of the motions panel an emergency petition for a writ of mandamus and a request for a stay of the "district court order" that no new jury trials be started until October 1, 1986. The petition and request for stay were formally filed on Monday, June 16, and on that day we granted a stay. We held oral argument on the mandamus petition on Thursday, June 19. A response and brief were filed on behalf of the district court on the preceding day and were prepared by the Department of Justice in Washington, D.C. An attorney from the Department represented the district court at the oral argument. Chief Judge Manuel Real also made a brief presentation.

The Justice Department included in its response a copy of a memorandum sent on June 12 to all district court judges by the Administrative Office of the United States Courts at the direction of the Executive Committee of the Judicial Conference of the United States.[2] The memorandum states that, because Congress failed to appropriate sufficient funds for juror payment, "civil jury trials will have to be suspended on June 16 through the end of the fiscal year (September 30).... [T]he Judicial Conference has directed that you empanel no new civil juries from June 16 forward.... [T]his suspension [of civil jury trials] must continue in effect until we inform you that sufficient funds have been made available ..."[3] According to an affi-

**2.** The Judicial Conference of the United States is composed of the Chief Justice of the United States, the chief judge of each judicial circuit, and a district judge from each circuit. *See* 28 U.S.C. § 331 (1982). Among its duties is to "submit suggestions and recommendations to the various [federal] courts to promote uniformity of management procedures and the expeditious conduct of court business." *Id.*

**3.** According to the Administrative Office, the budget shortfall in this case was caused by Congress' initial decision to appropriate only $43.4

million of the $46.2 million requested for juror expenses. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act, Pub.L. No. 99–180, 99 Stat. 1136, 1154 (1985). Additionally, according to the Administrative Office, the appointment of new judges has increased the rate of spending for juror fees beyond what was originally projected. While this sum was subsequently further reduced by $1.8 million pursuant to the Gramm-Rudman-Hollings Balanced Budget and Emergency Deficit Control Act, Pub.L. No. 99–177, 99 Stat. 1037, the Administrative Office

davit from the Director of the Administrative Office, juror expense funds are not yet exhausted; and the suspension of civil jury trials should ensure that sufficient funds will be available to pay criminal trial jurors and grand jurors the statutorily required juror fees through the end of the fiscal year.

Despite the seemingly mandatory language of the Administrative Office memorandum, we were informed at oral argument by the Justice Department and by Chief Judge Real, that neither the Department nor the district court considers the Administrative Office memorandum to be a mandate from the Executive Committee of the Judicial Conference or the Administrative Office, or to constitute an order from any entity that district judges take or refrain from taking any action. Rather, the Justice Department considers the memorandum to be essentially informational in nature. We were also informed by Chief Judge Real that there is no order of the district court prohibiting individual judges from empanelling civil juries. The Chief Judge advised us that jurors were present each day at the courthouse for criminal cases and that any judge who wished to do so could utilize any left-over jurors for civil cases, as is the usual practice in the Central District. He said that one judge had in fact empanelled a civil jury after the June 16 deadline. (It appears, on the other hand, that none of the 20 other active judges of the district court did so.)

The Justice Department unequivocally denies that individual district judges are presently free to empanel civil juries. It argues strongly that, because there are currently insufficient funds appropriated to pay the anticipated total amount of statutory fees [4] for all jurors for the remainder of the fiscal year, the Anti-Deficiency Act [5] prohibits district judges from empanelling any new civil juries. The Justice Department contends that the purpose of the Administrative Office memorandum is to inform district courts of the status of juror fee spending and of their obligations under the Anti-Deficiency Act.[6] In response, Walters argues that the Act does not prohibit judges from empanelling jurors regardless of whether there is a shortage of appropriated funds and that, if it does, it violates his seventh amendment right to a jury trial.

Because the Justice Department denies that either the Administrative Office memorandum itself or the Judicial Conference "directive" it refers to imposes any manda-

---

memorandum and an affidavit submitted to this court by the Director of the Administrative Office show that restoration of this amount would not be sufficient to fund juror expenses for the rest of the fiscal year. At oral argument, government counsel agreed that the precipitating cause for the suspension of civil jury trials was the initial funding shortfall and not the subsequent Gramm-Rudman reduction, and that the challenged actions involved here would have occurred whether or not Gramm-Rudman had been adopted. Thus, we assume that the Supreme Court's forthcoming decision on the constitutionality of Gramm-Rudman in *Bowsher v. Synar,* No. 85-1377 (argued April 23, 1986), will not directly affect the outcome of this case.

4. Title 28 U.S.C. § 1871 (1982) provides that federal jurors shall be paid a fee and establishes the amount at $30 per day.

5. Title 31 U.S.C. § 1341(a)(1), the relevant part of the Anti-Deficiency Act, reads as follows:

An officer or employee of the United States Government or of the District of Columbia government may not—

(A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; or

(B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law.

6. The oral argument included the following exchange:

Q: JUDGE FERGUSON: "Therefore, you would advise the district court judges that they have to obey the mandate in that [*i.e.,* the AO] memorandum?"

A: JUSTICE DEPARTMENT COUNSEL: "That's what I'm trying to say. There is no mandate in that memorandum. They have to obey the mandate of the Anti-Deficiency Act and the Constitution. This memorandum tells them what the situation is. I do not believe that this should be characterized as a mandate from the Executive Committee of the Judicial Conference."

tory duty on district judges, we need not decide the nature or extent of the Administrative Office's authority, or the Judicial Conference's, to issue mandatory orders to district judges regarding the empanelling of juries or the conduct of trials. It is obvious, however, that no entity acting in an administrative capacity has the authority to issue orders in derogation of the Constitution.

It is clear from the record before us that, at the direction of the Executive Committee of the Judicial Conference, the Administrative Office informed all district judges that the Anti-Deficiency Act requires the nationwide suspension of all new civil jury trials, and that on the basis of the Administrative Office memorandum the district judge, through his clerk, notified Walters that, because of the ordered suspension, his trial would not be held until the next fiscal year. The issue before us is whether district judges are legally obligated to empanel civil juries during the remainder of the current fiscal year, notwithstanding the Anti-Deficiency Act and the anticipated shortage in appropriated funds.

The proceeding before us raises both statutory and constitutional questions. For prudential reasons we avoid deciding constitutional questions unnecessarily. *Hospital and Service Employees Union, Local 399 v. NLRB,* 743 F.2d 1417, 1427

(9th Cir.1984). Ordinarily, if a case presents a potentially dispositive statutory question we decide that question before turning to the constitutional issue. In this case, however, the Justice Department has urged us to decide the constitutional question first, and we agree that it is necessary to do so. The petition was presented to us as an emergency motion. It raises a most serious issue regarding a continuing deprivation of a fundamental constitutional right, a deprivation that may well be occurring in every district throughout the circuit —and, in fact, the nation. The speediest possible decision is required. The constitutional question has been fully briefed and argued, and is relatively straightforward. The statutory questions are considerably more complicated; the legal issues involved have not been adequately briefed or argued by either party,[7] and the record lacks certain facts that might be necessary to a proper resolution of those questions.[8] Thus, this is not a case in which "the record presents some other ground upon which the case may be disposed of," *Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 569, 67 S.Ct. 1409, 1419, 91 L.Ed. 1666 (1947). Because of the need to decide this case at the earliest possible time, it is unavoidable that we reach the constitutional question now.[9]

---

7. The petitioners do not address the Anti-Deficiency Act at all in their brief. The Justice Department states its conclusion that the Act bars the empanelling of jurors once funds run out without citing any support for its interpretation of the Act. Among the complex statutory questions that neither party has addressed and that would have to be fully briefed before we could decide them are the following:

    (1) whether judges are "officers or employees of the United States Government" within the meaning of section 1341(a)(1);

    (2) whether, by empanelling jurors, judges "make or authorize an expenditure or obligation" within the meaning of that section;

    (3) whether, if judges do "make ... an ... obligation" to pay jurors by empanelling them, the obligation is exempt from section 1341(a)(1) as an obligation the making of which is authorized by law, in this case 28 U.S.C. § 1871, *see New York Airways, Inc. v. United States,* 369 F.2d 743, 752, 177 Ct.Cl. 800 (1966) (construing former 31 U.S.C. § 665(a), the predecessor to

section 1341(a)(1)); *United States v. Langston,* 118 U.S. 389, 393–94, 6 S.Ct. 1185, 1186–87, 30 L.Ed. 164 (1886) (where Congress has fixed a salary amount, right to payment is not abrogated by the failure to appropriate sufficient money to pay that amount);

    (4) whether it is legal to transfer money from any other judicial account to pay jurors; and

    (5) whether a violation of the Act can occur while there are still funds in the account appropriated but uncommitted.

8. For example, it is unclear whether other appropriations to the courts, such as the Chief Justice's discretionary fund, are still unexpended and could be used to pay juror expenses. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act, Pub.L. No. 99–180, 99 Stat. 1136, 1153 (1985).

9. Moreover, even if the Anti-Deficiency Act does not constitute a statutory bar to the empanelling

Walters [10] claims that the suspension of civil jury trials following receipt of the memorandum from the Administrative Office violates the seventh amendment and, specifically, his right to a civil jury trial.[11] The Justice Department contends that the seventh amendment does not guarantee that a civil jury trial must take place at a particular time and that, therefore, a three and one-half month suspension of jury trials does not violate the seventh amendment in general, or Walters' right in particular. In support of its argument, the Justice Department notes that, while the sixth amendment guarantees a speedy *criminal* jury trial, the seventh amendment does not guarantee a speedy *civil* jury trial. It also notes that district courts frequently postpone scheduled civil jury trials for reasons other than the lack of funds to pay jurors. These reasons include calendar congestion, lack of a sufficient number of judges, and the priority accorded to trying criminal cases before civil actions.

The petition before us does not involve a judge's determination, after exercising his discretion in good faith, that the number of cases that are ready for trial exceeds the inherent limitations on his ability to try them immediately, and that he must therefore schedule future trial dates for some of those cases. Nor does it involve a judge's attempts to balance the competing demands of the sixth and seventh amendments. We recognize that calendar delays resulting from the current high volume of litigation are all too common, and we have frequently said that the district courts must have wide discretion to handle such matters. In such circumstances, the proper exercise of discretion by district judges implicates no seventh amendment right.

Here, as the Administrative Office memorandum makes clear, what is proposed is not any exercise of judicial discretion by individual district judges. Rather, we are confronted with the wholesale non-discretionary suspension of the civil jury trial system and a blanket moratorium on all civil jury trials for a three and one-half month period. The Director of the Administrative Office, in his affidavit, acknowledges that the Constitution would prohibit a similar suspension of criminal jury trials not only "because [of] the constitutional and statutory mandates for speedy trials of criminal cases, [but also because of] the constitutional right to a criminal jury trial." However, the Director contends that there is no constitutional bar to the suspension of civil jury trials, at least where financial considerations require such action. The Justice Department agrees with this contention. We disagree, most emphatically.

The Supreme Court has emphasized, in no uncertain terms, the importance of the right to a civil jury trial and the need for the courts to be vigilant in guarding against the erosion of that right:

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen ... should be jealously guarded by the courts.

*Jacob v. New York City*, 315 U.S. 752, 752–53, 62 S.Ct. 854, 854, 86 L.Ed. 1166 (1942).

The Supreme Court has adopted a most rigorous standard for reviewing any potential infringement of the right to a civil trial. The Court has said more than once that " '[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scruti-

---

of juries, it might well be necessary for us to reach the constitutional question. The fact that the Administrative Office has advised all district judges that no funds are available to pay juror fees might make those judges understandably reluctant to empanel a jury in the absence of an authoritative decision making it clear that they have a constitutional obligation to do so.

**10.** Hereafter, the use of Walters name is for illustrative purposes only. We could as easily refer to any of the other petitioners.

**11.** The seventh amendment guarantees that "the right of trial by jury shall be preserved" in civil cases. U.S. Const. Amend. VII.

nized with the utmost care.'" *Beacon Theatres v. Westover,* 359 U.S. 500, 501, 79 S.Ct. 948, 951, 3 L.Ed.2d 988 (1959) (quoting *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301 (1935)).

Thus, our duty is clear. We must vigilantly protect the right to civil jury trials, and we must scrutinize in the most rigorous manner possible any action that appears to limit in any way the availability of that right.

We begin by repeating some past observations. We have previously noted that the cost of the civil jury system nationwide is "minimal at best," that in 1979 the cost was about equal to that of "two jet fighters," and that the cost factor is not a justification for restricting the use of civil juries. These observations, set forth in *In re U.S. Financial Securities Litigation,* 609 F.2d 411, 430 & n. 71 (9th Cir.1979), *cert. denied, sub nom Gant v. Union Bank,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980), are equally relevant today. We would only add that in 1986 the total cost of providing both the civil and criminal jury system nationwide, (including the three and one-half month period at issue here) is but *one-sixtieth* the cost of building one new space shuttle.[12]

Next, we proceed directly to the heart of the issue, the relationship between constitutional rights and the public fisc. The answer to the fundamental question before us is, as the Justice Department has suggested, simple. It is not, however, the one the Department has proffered. We conclude that the availability of constitutional rights does not vary with the rise and fall of account balances in the Treasury. Our basic liberties cannot be offered and withdrawn as "budget crunches" come and go,

nor may they be made contingent on transitory political judgments regarding the advisability of raising or lowering taxes, or on pragmatic or tactical decisions about how to deal with the perennial problem of the national debt. In short, constitutional rights do not turn on the political mood of the moment, the outcome of cost/benefit analyses or the results of economic or fiscal calculations. Rather, our constitutional rights are fixed and immutable, subject to change only in the manner our forefathers established for the making of constitutional amendments. The constitutional mandate that federal courts provide civil litigants with a system of civil jury trials is clear. There is no price tag on the continued existence of that system, or on any other constitutionally-provided right.

The decision to maintain a system of civil jury trials was made long ago at the time our Constitution was adopted. It is not within our power or that of any other branch of government to create exceptions for budgetary reasons. *See Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1547 (Fed.Cir.1983) ("So long as the Seventh Amendment stands, the right to a jury trial should not be rationed ..."); *Raytheon Co. v. RCA,* 76 F.2d 943, 947 (1st Cir.), *aff'd* 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327 (1935) ("Neither the Congress nor the courts can deprive a litigant of [the] right [to a civil jury trial]"); *cf. Ex Parte Milligan,* 71 U.S. (4 Wall) 2, 125, 18 L.Ed. 281 (1866) (Rejecting the argument that criminal jury trials could be suspended during wartime, the Court said that our founders "secured the inheritance they had fought to maintain, by incorporating in a written constitution the safeguards which *time* had proved were essential to its preservation.

---

12. *See* New York Times, May 25, 1986, at 1, J.N. Wilford, "Reagan Is Reported Near Decision To Approve a New Space Shuttle," (Cost of new space shuttle estimated to be $2.8 billion). Other estimates of the cost of a new space shuttle include improvements and range from $5 to $8 billion, *see* New York Times, May 16, 1986; *see also* n. 3 *supra* (total juror costs for fiscal year 1986 estimated to be $46.2 million; amount appropriated 43.4 million).

The total cost of operating the federal judicial system, including the salaries of judges and all other personnel, is only slightly more than a third the cost of a single space shuttle, *see* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act, Pub.L. No. 99–180, 99 Stat. 1136, 1153–55 (1985). If the higher estimate of the space shuttle cost is correct, our entire federal court system costs only one-eighth as much as a single shuttle.

Not one of these safeguards can the President, or Congress, or the Judiciary disturb ...").

■■■■ We conclude that the civil jury trial system may not be suspended for lack of funds.[13] Specifically, we conclude that the seventh amendment right to a civil jury trial is violated when, because of such a suspension, an individual is not afforded, for any significant period of time, a jury trial he would otherwise receive. We do not suggest that a suspension of any duration whatsoever would be constitutional. We need only decide here that a suspension for a significant period is barred by the seventh amendment. The suspension of civil jury trials described in the Administrative Office memorandum clearly falls within the parameters of that term. In fact, we believe three and a half months constitutes far more than a significant period, given the mandate of the seventh amendment. We recognize that the suspension in this case may be shortened if supplemental appropriations become available. However, the possibility of future changed circumstances cannot affect our decision. We take the suspension as we find it, and we apply the rigorous scrutiny that the law requires. *See Beacon Theatres v. Westover*, 359 U.S. at 501, 79 S.Ct. at 951. Nor would our view be any different if there were no specific time period set forth in connection with the suspension of civil jury trials and if, instead, a moratorium were imposed only "until further notice." Any suspension other than a most minimal one would, we believe, be for a significant period.

■■ It is no answer to say, as the Justice Department does, that Walters has no constitutional right to a jury trial on a particular day and that therefore the postponement of his trial causes no injury to his seventh amendment rights. Government counsel argues that the issue is principally one of standing. However, it is clear from the record that all the petitioners have

standing. They are all scheduled to have jury trials before October 1, 1986. Thus, they are all directly and adversely affected by the suspension of the constitutionally-mandated civil jury system. A denial of a right need not be absolute before the Constitution is implicated. A temporary deprivation of a right, or a limitation on it, may violate the Constitution as well. Here, the constitutional injury to the petitioners is not that they are denied civil jury trials on particular days but that the jury trials they are scheduled to receive are being unlawfully withheld. While the particular trial date is not mandated by the seventh amendment, the trial itself may not be postponed or delayed for reasons that are violative of the Constitution.

The Justice Department also argues that if jury trials are held after the funds currently appropriated for that purpose are exhausted this court will then be required, in subsequent cases, to order the Treasury to pay out unappropriated funds or to order Congress to appropriate additional funds. It contends that we are prohibited from doing either by *Reeside v. Walker*, 52 U.S. (11 How.) 272, 286, 305–07, 13 L.Ed. 693 (1850), and *National Ass'n of Regional Councils v. Costle*, 564 F.2d 583, 588–90 (D.C.Cir.1977). However, we are not asked in this case to order Congress or the Treasury to make payments to any juror or to appropriate any funds, and we have no reason to consider the question of our power to do so. Whether jurors subsequently will be denied payment for their services is too speculative a matter to concern us here; nor do we see any reason for us to presume that such a problem will arise. There are numerous possible occurrences that would obviate all questions relating to the payment of juror fees, not the least of which is that Congress may ultimately act to provide any funds necessary to pay the costs of maintaining the civil jury system. Since the Constitution requires that the system be preserved, it would be presumptuous of

---

**13.** We note again that we do not hold that the Anti-Deficiency Act requires the result suggested by the Administrative Office. If it did, its commands would, of course, have to yield to those of the Constitution.

us to assume that Congress would fail to do its part.[14]

Despite our conclusion that the suspension of the civil jury trial system is unconstitutional, we do not believe a writ of mandamus is required in this instance. Mandamus is a drastic remedy that should be invoked only in extraordinary circumstances. *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). Considering the rapid and confused sequence of events that gave rise to this proceeding, and the seemingly mandatory language of the Administrative Office memorandum, the district judge's action is readily understandable. We are confident, however, that the judges of the Central District who are presiding over the cases that are the subject of this petition will now act in light of the principles set forth in this opinion, that they will follow their normal procedures and exercise their customary and reasonable judicial discretion in scheduling and holding civil jury trials, and that they will do so without regard to the availability or unavailability of appropriated funds for the payment of juror fees.

## II

### *District of Alaska*

The Rolersons are plaintiffs in a civil suit scheduled for jury trial beginning June 23, 1986, in the District of Alaska. Upon receiving the Administrative Office memorandum on June 13, the district judge announced that he would continue the trial at a hearing to be held on June 18. On June 18 the Rolersons filed a petition for a writ of mandamus with this court, along with a request for a stay, to prevent the district judge from postponing the June 23 trial date. We issued the stay.

For the reasons stated in our discussion of the petition involving the cases pending in the Central District of California we also deny the Rolersons' petition for a writ of mandamus.[15] We are confident that the district judge in the Rolerson case, like all other judges concerned, will act in accordance with our holding that the right to civil jury trials may not be suspended because of insufficient appropriated funds for the payment of juror fees. Further, in *Rolerson* we assume that our stay has been observed and that the selection of a jury has already occurred.

## III

We believe the guidance we give here will be of equal benefit to all district courts in the circuit and that it is not necessary for us to issue a writ in order to ensure that the civil jury trial system will continue in full force and effect throughout our circuit. Our denial of the petitions is without prejudice to the petitioners' right to renew them if there is a further infringement of their seventh amendment rights. We direct that any such further petitions or related motions in the pending proceedings be referred to this panel for disposition, along with any other petitions raising the issue whether an alleged insufficiency in the juror fee appropriation for the current fiscal year requires or permits a district court to suspend civil jury trials. The stays previously granted are vacated.

Petitions Denied Without Prejudice

---

**14.** We note in passing that there is no specific constitutional requirement that jurors be paid, or that they be paid at the present statutory rate. We need not consider here whether, if Congress wishes to economize, it has the alternative of reducing or eliminating the statutory jury fee it has created under 28 U.S.C. § 1871. Nor need we consider what the effect on section 1871 might be of a deliberate Congressional refusal to appropriate additional funds once it has ob-

tained clear knowledge that jurors will be called to serve and that insufficient appropriated funds exist to cover the payment of their statutory fees.

**15.** Because we deny the petition, we do not order an answer from the district court or oral argument in this case. *See* Fed.R.App.P. 21(b).