**A. Wallace TASHIMA, United States District Judge, Plaintiff–Appellee,**

v.

**ADMINISTRATIVE OFFICE OF The UNITED STATES COURTS; L. Ralph Mecham, Director, Defendants–Appellants.**

**No. 89–55906.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted September 11, 1990.

Decided Sept. 5, 1991.

Withdrawn Oct. 21, 1991.

Decided June 19, 1992.

---

Douglas Letter, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Christopher G. Caldwell, Hedges & Caldwell, Los Angeles, Cal., for plaintiff-appellee.

Before: FLETCHER, BOOCHEVER, WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

L. Ralph Mecham, Director of the Administrative Office of the United States Courts ("AO"), appeals the district court's declaratory judgment directing the Administrative Office to pay legal expenses incurred by Judge Tashima. Judge Tashima was represented by private counsel in three suits in which the validity of a local district court rule was disputed. This court has jurisdiction over this timely appeal under 28 U.S.C. § 1291. We affirm the district court's judgment.

BACKGROUND

By majority vote, the judges of the Central District of California adopted Local Rule 2.2.1 which, in connection with Local Rules 2.1 and 2.2.3.2, provides that an attorney who lives or is regularly engaged in business in California may perform as an attorney in the court only if the attorney is a member of the California state bar. Such an attorney may not appear *pro hac vice.*

In 1987 and 1988, respectively, two suits were filed in the Federal District Court for the Central District of California challenging the constitutionality of Rule 2.2.1. *Maynard v. United States Dist. Ct.,* 701 F.Supp. 738 (C.D.Cal.1988) *aff'd,* 915 F.2d 1581 (9th Cir.1990) and *Giannini v. Real,* 711 F.Supp. 992 (C.D.Cal.1989) *aff'd* 911 F.2d 354 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990) (*"Giannini I"*). After a final determination in favor of the defendants was reached in *Giannini I,* Giannini brought another action, *Giannini II,* based on the same facts. In each of these three suits, the judges of the Central District were named individually in their official capacity. Because the judges were sued in their official capacity, they requested the AO to arrange for legal representation by government attorneys. The Department of Justice assigned the U.S. Attorneys' Office for the Central District of California to defend the judges against these actions. Assistant U.S. Attorney Roger West was assigned to the case. The primary defense West raised on behalf of the judges was that the rule was constitutional.

A. Wallace Tashima, one of the judges of the Central District and a named defendant in these suits, requested that the AO authorize funds for him to obtain private counsel to defend him under 28 U.S.C. § 463. Judge Tashima held the view that the challenged rule was unconstitutional, "outmoded and wrong." Therefore, Judge Tashima believed that the suits should be defended on other grounds and that the constitutional question should be avoided. In this respect, Judge Tashima's desired defense strategy differed from the defense strategy advanced by West on behalf of the other judges. As a result of this conflict of interest, Judge Tashima was unable to accept representation by the U.S. Attorney. Thus, he was forced to request funds with which to obtain private counsel to mount his defense.

The AO refused to authorize such funds. The AO erroneously believed that Judge Tashima's intended litigation strategy was to assert that Local Rule 2.2.1 was unconstitutional. Based on this erroneous belief, the AO took the position that it was not required to authorize funds that would allow Judge Tashima to advocate a position contrary to that of the majority of the court.[1]

Judge Tashima eventually corrected the Administrative Office's mistaken view of his litigation strategy and received an authorization of funds for the limited purpose of seeking his dismissal from *Giannini II* and *Maynard.* However, the AO continued to refuse to authorize funds for Judge Tashima's private counsel to mount a complete defense. Furthermore, despite the fact that Judge Tashima's defense strategy was the same for each of the suits challenging Local Rule 2.2.1, the AO continued to refuse to authorize any funds for the payment of Judge Tashima's defense costs in *Giannini I.* Judge Tashima then filed this suit. He brought actions for mandamus, relief under the Administrative Procedure Act and declaratory relief. The dis-

trict court ruled in favor of the AO on the issues of mandamus and relief under the APA but granted declaratory relief in favor of Judge Tashima. The AO appealed.

## DISCUSSION

### I. *STATUTORY CONSTRUCTION OF SECTION 463*

Judge Tashima argues that under 28 U.S.C. § 463 the AO must pay his legal fees for representation by private counsel. Section 463 is a statute authorizing the AO to provide counsel to judges sued in their official capacity when the services of a government attorney are not available.

#### A. *Section 463*

Section 463 provides:

Whenever a Chief Justice, justice, judge, officer, or employee of any United States court is sued in his official capacity, or is otherwise required to defend acts taken or omissions made in his official capacity, and the services of an attorney for the government are not reasonably available ..., the Director of the Administrative Office of the United States Courts may pay the costs of his defense. The Director shall prescribe regulations for such payments subject to the approval of the Judicial Conference of the United States.

Congress enacted section 463 to fill the gap in the legal assistance provided to federal judges created when a judge is sued in his or her individual capacity, but the Department of Justice is unable to provide representation due to a conflict of interest or other reason. *See* S.Rep. No. 97–275, *reprinted in* 1982 U.S.C.C.A.N. 11, 26. Normally, when federal judges are sued in their official capacity, a government attorney will be assigned to defend them. 28 U.S.C. § 516–17; 57 Op.Comp.Gen. 444 (1975); *see Meredith v. Van Oosterhout,* 286 F.2d 216 (8th Cir.), *cert. denied,* 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745 (1961). The Comptroller General has stated that "it

---

**1.** The AO consistently mischaracterized Judge Tashima's litigation strategy throughout the Administrative review process. The correspondence directed to the AO by both Judge Tashima and his counsel clearly indicated that the Judge

did not intend to assert in the litigation that the rule was unconstitutional. The mischaracterization of Judge Tashima's position only served to prolong this dispute and to strain relations between the Judges and the AO.

is well established that when an officer of the United States is sued because of some official act done in the discharge of an official duty the expense of defending the suit should be borne by the United States." *Guide to Judiciary Rules and Procedures,* Chap. XI, part E, exh. A, at 19. The rationale for providing a government attorney to defend official acts taken by judges is that such representation is necessary to ensure the independence of the judiciary. If a government attorney were not provided, judges would be forced to hire counsel with their own private funds. Judges would then be vulnerable to improper pressure created by threatened lawsuits. Furthermore, lack of such protection would increase the difficulty in recruiting talented attorneys to join the federal bench.

Yet, prior to the enactment of section 463, no provision had been made to deal with a situation where a government attorney could not represent the judge due to a conflict of interest or for other reasons. To remedy this deficiency, Congress adopted section 463, authorizing the Administrative Office to pay the costs of private counsel where a government attorney was unavailable. However, the statute states that the Administrative Office *may* pay the costs of private defense counsel. Thus, the language allows for some discretion on the part of the AO to determine whether to pay such costs. The scope of this discretion is the primary issue in this case.

### B. *The AO's Interpretation of Section 463*

The AO claims that Congress' use of the discretionary term "may" rather than the mandatory term "shall" indicates that Congress did not intend to impose any duty on the Administrative Office to pay for private counsel to represent judges sued in their official capacities when a government attorney is unavailable. At various times during the dispute, the AO has advanced differing theories to support the exercise of its discretion to deny Judge Tashima's request for private counsel. The AO claims that it may deny the request because *it* determined that providing Judge Tashima

with private counsel was not in the best interests of the judiciary. The AO also claims that it may deny the request because *it* determined that the Judge Tashima's chosen litigation strategy was inappropriate. Finally, the AO claims that it may deny the request because *it* believed that Judge Tashima should not have personally taken the view, contrary to the position of the majority of the court, that rule 2.2.1 is unconstitutional.

The underlying problem which the AO has with Judge Tashima's request for private counsel stems from the fact that Judge Tashima voted against the adoption of rule 2.2.1. The AO claims that Judge Tashima's judicial duties with respect to the enactment of the rule ended when the court voted to adopt it over Judge Tashima's objections. It is apparent that the AO believes that as a member of the District Court, Judge Tashima had a duty, once he lost the vote on rule 2.2.1, to adopt and defend publicly the position taken by the Central District. The AO contends that the members of the court should present a united front to litigation against the court, particularly in the face of controversy such as that generated by this case. The corollary to that proposition, however, is that individual dissenting opinions such as Judge Tashima's would be suppressed.

The AO further contends that the plaintiffs in each of the suits ought not to have named the individual judges as defendants at all, but rather should have only named the Central District. In the AO's view, had the plaintiffs named the correct defendant, then only one viewpoint, one defense, would have been advanced in the litigation. Judge Tashima's unique views on the issue would not have been presented. The AO's denial of private counsel for Judge Tashima was an attempt to make the case conform to the AO's view of what the lawsuit, correctly brought, should have looked like.

This court declines to adopt any of the AO's interpretations of the statute as each interpretation raises serious constitutional questions.

### C. Principles Underlying Construction of Section 463

█ It is a well established principle of statutory construction that a court must construe a statute so as to avoid raising constitutional questions. "A statute ... is to be construed, if such a construction is fairly possible, to avoid raising doubts about its constitutionality." *St. Martin Lutheran Church v. South Dakota*, 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *see also DeBartolo Corp. v. Florida Gulf Coast Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.), *cert. denied*, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). Each of the various interpretations advanced by the AO to support its denial of Judge Tashima's request for private representation raise constitutional questions, precluding this court from adopting any of them as the proper construction of section 463. The AO's interpretations raise questions pertaining to separation of powers, independence of the judiciary, the First Amendment and the relationship between the courts and the Administrative Office.

### 1. Separation of Powers

█ Despite the fact that the AO works directly for the federal judiciary, it is not an Article III entity. There are two fundamental attributes which distinguish Article III entities from other judicial or quasi-judicial bodies: life tenure and guaranteed salary. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 51, 102 S.Ct. 2858, 2861, 73 L.Ed.2d 598 (1982). These two attributes ensure the independence of the federal judiciary and insulate it from the influence of the other two branches of the federal government. *Id.* at 57–60, 102 S.Ct. at 2864–2865. There exist several bodies which are closely associated with Article III courts, administrative agencies which make initial factual de-

terminations for courts, like the Equal Employment Opportunity Commission, U.S. Magistrates, and the Administrative Office. However, the Supreme Court has consistently found that bodies which lack the attributes of life tenure and guaranteed salary, no matter how closely associated with Article III entities they may be, are not Article III entities themselves. *Id.* at 61, 102 S.Ct. at 2866 (bankruptcy judges and courts are not Article III entities); *United States v. Raddatz*, 447 U.S. 667, 681–83, 100 S.Ct. 2406, 2451–52, 65 L.Ed.2d 424 (1980) (U.S. Magistrates are not Article III entities); *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (U.S. Employment Compensation Commission ("ECC") is not an Article III entity). The Court has referred to these bodies as "non-Article III adjuncts." *Northern Pipeline*, 458 U.S. at 84, 102 S.Ct. at 2878. The AO, like U.S. Magistrates and the ECC works for the judiciary. Also like U.S. Magistrates and the ECC, the AO's personnel do not have life tenure and guaranteed salaries. Therefore, the AO is not an Article III entity, but rather a "non-Article III adjunct" like U.S. Magistrates and the ECC.

The Constitution "commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." *Northern Pipeline*, 458 U.S. at 60, 102 S.Ct. at 2865. The Supreme Court has been extremely vigilant in invalidating attempts by Congress to reassign powers vested in the judiciary to other bodies because "such inroads suggest unwarranted encroachments upon the judicial power" of Article III judges, threatening their independence. *Id.* at 84, 102 S.Ct. at 2878. Similarly, the Court has zealously protected the Judiciary from any outside influence or interference with judicial functions by non-Article III entities.

█ The AO claims that, pursuant to section 463, Congress gave it the discretion to pick and choose which federal judges sued in their official capacity will be represented at government expense and which will not. Such a construction of section

463 raises a substantial separation of powers problem. The discretion to pick and choose who will be represented at government expense and who will not would give the AO the power to influence or coerce a federal judge in the performance of the judge's official duties. While we do not believe that the Administrative Office would ever overtly attempt to use such influence, it is clear that the spectre of being left without paid counsel could play a role in a judge's decision on how to perform his judicial duties. For instance, had Judge Tashima been aware that the AO believed it had the discretion to pick and choose who will be represented, he might have considered the risk of being left without paid counsel in deciding whether to vote against rule 2.2.1. The Supreme Court has recognized that economic factors may work a coercive influence upon a federal judge's independent thinking. *Id.* at 60, 102 S.Ct. at 2865. Although such economic considerations are unlikely to be dispositive in any judge's decision, it is exactly the sort of outside influence over the performance of judicial functions against which we must jealously guard.

Although Congress could have elected not to provide private counsel for the Judiciary altogether, once Congress has authorized representation by private counsel, access to such counsel may not be controlled in any way which might influence the performance of judicial functions. *Cf. United States v. Klein*, 80 U.S. (13 Wall) 128, 20 L.Ed. 519 (1872) (Congress could have elected not to create the Court of Claims, but having done so, is not permitted to make Rules of Decisions (mandate a particular result in a class of cases) for the court as that "passes the limit which separates the legislative from the judicial power"). Anytime Congress enables a non-Article III entity like the AO to affect the performance of the judicial functions of an Article III judge, as would the AO's construction of section 463, a serious separation of powers issue is raised.

A second separation of powers problem is raised by the AO's claim that it may pick and choose who will be represented at government expense based on its determination of whether it would be in the best interests of the Judiciary to provide private counsel. Determining what is in the best interests of the judiciary is a policy function, not a ministerial function. Judicial policymaking is a function traditionally assigned to the Judicial Conference and the Judicial Councils, Article III entities.[2] Under the AO's interpretation of section 463, Congress reassigned the power to decide what is in the best interests of the Judiciary to the AO, at least for the purpose of deciding whether to authorize counsel. This we seriously doubt. Such a reassignment of powers from Article III entities to a non-Article III adjunct is precisely the type of threat to the independence of the Judiciary which the Supreme Court has consistently invalidated. *Northern Pipeline*, 458 U.S. at 84, 102 S.Ct. at 2878. This court declines to rule on this issue. We raise it only to illustrate why we do not adopt the AO's view of the statute. To adopt its view would unnecessarily raise serious constitutional issues.

### 2. First Amendment

 The AO's interpretations of the statute also raise serious First Amendment questions. The AO claims that it may deny Judge Tashima's request because it disagreed with the Judge's chosen litigation strategy and, in the alternative, because it believed that it was inappropriate for the Judge to adopt a view of the rule contrary to that of the majority of the Central District. These theories clearly implicate the First Amendment. Obviously, a defendant's chosen litigation strategy and a defendant's own views on a matter are both legitimate forms of expression falling under the protections of the First Amendment. A federal judge is entitled to the same protections of the First Amendment

**2.** The Judicial Conference and Councils are properly considered Article III entities as they are composed of Article III judges who possess the required attributes of life tenure and guar-

anteed salary. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 61, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982).

as anyone else. *Cf. Chandler v. Judicial Council,* 398 U.S. 74, 140, 90 S.Ct. 1648, 1682, 26 L.Ed.2d 100 (1970) (Douglas, J. dissenting) ("Federal judges are entitled, like other people, to the full freedom of the First Amendment"). In addition, it is well settled that the government may not deny a valuable benefit on a basis which violates constitutionally protected rights, especially freedom of speech. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). This court declines to decide whether the AO's denial of Judge Tashima's request actually violated his First Amendment rights. However, it is clear that the AO's interpretations raise First Amendment issues.[3]

### 3. Relationship Between The Courts And The AO

Finally, the AO's interpretations of the statute turn the intended superior-subordinate relationship of the Judiciary and the Administrative Office on its head. The AO's contention that section 463 gives it the responsibility to determine which judges will be defended and which will not misperceives the role of the Administrative Office. The AO was created to perform, and historically has performed, a limited ministerial function. It was not intended to govern or make policy for the Judiciary. It was established, in large part, to relieve the Judiciary from possible interference by the Department of Justice, which had previously carried out the administrative duties of the courts. *See* Peter G. Fish, *The Politics of Federal Judicial Administration* 91–145 (1979). The AO's role was intended to be administrative "in the narrowest sense of that term." *Chandler v. Judicial Council,* 398 U.S. 74, 97, 90 S.Ct. 1648, 1660, 26 L.Ed.2d 100 (1970) (Harlan, J., concurring).

The role of determining what is in the best interests of the Judiciary, determining the merits of an individual judge's litiga-tion strategy and determining the merits of a judge's own views on a matter does not fall within a definition of administrative/ministerial duties, particularly not when the term is to be taken in its strictest sense. Each of these determinations is by nature a judicial function which must be controlled by the Judiciary itself, either through the Judicial Conference, the Judicial Councils or, not infrequently, a lone Article III judge. The AO "was entrusted with no authority over the performance of judicial business." *Id.* The AO's policy determinations in this case are by nature judicial business and outside the role of the Administrative Office.

■ Each of the AO's various interpretations raises serious constitutional questions. However, the AO's proposed interpretations are not the only possible readings of the statute. As we set forth below, a common sense reading based on the plain language of section 463 yields an interpretation which does not raise constitutional questions. There is no indication of a contrary Congressional intent that would preclude our adoption of this alternative reading. In the absence of any Congressional guidance on the issue of the AO's discretion, this court must adopt the construction of the statute which does not have any constitutional problems, so as to avoid unnecessarily addressing constitutional questions.

### D. *Construction of Section 463*

■ The AO claims that Congress' use of the discretionary term "may" rather than the mandatory term "shall" indicates that Congress did not intend to impose any duty on the AO to pay for private counsel to defend a judge's official acts when a government attorney is unavailable. While the use of the term "may" bars a finding that the statute establishes a clear unambiguous duty to pay *all* such fees, and thus bars a mandamus action,[4] it does not, as

---

**3.** First Amendment issues were raised and considered by the district court. *Tashima v. Administrative Office,* 719 F.Supp. 881 (C.D.Cal. 1989).

**4.** The district court considered this exact issue and determined that Congress' use of the term "may" precluded the finding that the Administrative Office had a clear ministerial duty necessary to sustain a mandamus action. *Tashima v.*

the AO suggests, grant the Administrative Office unfettered discretion to decide which judges are entitled to have the government pay for a defense of their official acts. Section 463 is essentially an authorizing statute, enacted to permit the expenditure of federal funds for the defense of federal judges who have been sued in their official capacity when the services of the Department of Justice are unavailable. It is not a grant of discretion to the AO to pick and choose who will be defended and who will not.

### 1. Initial Authorization For Private Counsel Under Section 463

■ With certain limited exceptions, section 463 imposes a duty on the AO to pay the costs of a private attorney to defend a federal judge in an action where he has been sued in his official capacity and the services of a government attorney are unavailable. Thus, when a judge initially requests authorization to obtain private counsel, the AO has limited responsibilities. The AO must conduct a limited inquiry into the nature of the lawsuit and the availability of a government attorney. If, as a result of this inquiry, the AO determines that (1) the judge has in fact been sued, (2) in his official capacity, and (3) the services of government attorney are not available due to conflict of interest or other reasons, then the AO *must* authorize the judge to obtain private counsel. The AO has *no discretion* to refuse authorization of private counsel in these circumstances. The only issue is whether the judge has satisfied the required three elements. The AO may not inquire into, nor deny private representation on the basis of, an individual judge's chosen litigation strategy.

■ There are, however, two circumstances under which the AO may refuse to pay some portion of the fees submitted by private counsel. The AO may refuse to pay a particular charge when that charge is for offensive litigation actions taken by the judge as this is clearly barred by the statute. The AO, pursuant to its statutory discretion, may also refuse to pay a particular charge if the AO determines that the charge is excessive. Therefore, the AO should inform the judge that it is only authorized by Congress to pay for defensive litigation actions and that any offensive litigation action which the judge may take will have to be paid for by the judge. The AO should also inform the judge that it has the discretion to decline to pay fees or charges which it determines are excessive.

### 2. Payment Of Fees Submitted By Private Counsel

Once the suit has been resolved, private counsel must submit an itemized list of charges to the Administrative Office. This list permits the AO to examine the charges and determine whether any fall within the two categories of fees which it may refuse to pay.

### a. *AO Has No Authorization To Pay Non-defense Fees*

■ The AO must examine the charges submitted to determine whether any of the charges are for offensive litigation actions such as the filing of a counterclaim. Such an examination is necessary because the AO has no authority to pay non-defense fees. Section 463 states that the Administrative Office "may pay the costs of [a judge's] *defense.*" 28 U.S.C. § 463 (emphasis added). A plain language reading of the statute indicates that the payment of fees for offensive litigation actions is not covered by section 463. As the statute contains no mention of offensive costs, the AO lacks the authority to pay such costs.

■ It is not necessary at this time to set forth a list of offensive and defensive litigation actions. The crux of the matter is whether the judge acted like a defendant or acted like a plaintiff. Bringing a motion to dismiss, as Judge Tashima did here, is a defensive action. A motion to dismiss seeks to deny liability and to prevent recovery, and thus, is by nature defensive. Conversely, filing a counterclaim is an offensive action. A counterclaim seeks to estab-

*Administrative Office,* 719 F.Supp. 881, 884–86 (C.D.Cal.1989).

lish liability and to obtain some form of recovery and thus, is by nature offensive. Provided that the judge's litigation actions are by nature defensive, the AO is authorized and obligated to pay costs. Therefore, prior to paying any fees, the AO must make an initial threshold determination as to whether each of the charges submitted for payment is a defense fee. Obviously, such a determination cannot be made when private counsel is first requested; the AO must wait for the actual fees to be submitted. Once the fees have been submitted, the AO may refuse to pay any non-defense charges on the basis that it lacks the statutory authority to do so. Judicial review of the AO's determination of whether charges are for offensive or defensive litigation actions presents a mixed question of law and fact and is conducted de novo.

### b. *AO Has Discretion To Refuse To Pay Excessive Fees*

▪ Next, the AO's statutory discretion comes into play. The AO must examine the charges to ensure that none of the charges is excessive and that private counsel is not charging an excessive rate or for excessive time spent in mounting the judge's defense. A plain language reading of the statute reveals that Congress intended to give the AO some discretion with respect to the payment of such fees by its use of the term "may." After eliminating the possible areas of discretion claimed by the AO which raise serious constitutional concerns, we are left with the purely ministerial function of determining whether to decline to pay particular fees and charges on the basis that they are excessive. Determining whether fees or charges submitted by private counsel for the defense of a judge are excessive is exactly the type of ministerial function that Congress may vest in the AO without raising separation of powers problems.

Furthermore, it is not reasonable to conclude that Congress intended to require the AO to pay all costs or time charges regardless of how excessive they might be. The logical conclusion is that Congress used the term "may" so as to allow the AO to refuse to pay excessive fees without becoming subject to a mandamus action. Thus, we find that under section 463 the AO, in the exercise of its discretion, may refuse to pay any charges which it has determined were excessive. Judicial review of this factual determination by the AO is conducted under the abuse of discretion standard.

If the AO conducts this detailed review of the charges submitted and determines that none is for offensive litigation actions and none is excessive, then it *must* pay the charges submitted.

### II. *THE LOWER COURT PROPERLY GRANTED DECLARATORY JUDGMENT AS THE ADMINISTRATIVE OFFICE ERRED IN NOT AUTHORIZING AND PAYING FOR JUDGE TASHIMA'S COUNSEL*

This court reviews decisions to grant or deny declaratory relief de novo. *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 354 (9th Cir.1988).

### A. *The Administrative Office Erred in Not Authorizing Private Counsel for Judge Tashima in Maynard, Giannini I and Giannini II*

▪ The Administrative Office's role in authorizing private counsel is extremely limited. Judges requesting private counsel must meet three specific criteria in order to be entitled to private representation at government expense. They must establish that they are a federal judge, that they have been sued in their official capacity and that the services of a government attorney are unavailable. Once this threshold requirement has been met, the Administrative Office must authorize counsel.

Judge Tashima met this threshold requirement with respect to each of the three suits: *Maynard, Giannini I* and *Giannini II*. Judge Tashima is a Federal District Judge for the Central District of California. Judge Tashima was sued in his official capacity as a judge of the Central District in each of the three suits which challenged rule 2.2.1. Finally, the services of the Department of Justice were not available to the Judge due to the conflicting litigation

strategies adopted by the judges. Therefore, the AO should have authorized Judge Tashima to obtain private counsel in each of the three actions.

Moreover, the AO should not have imposed conditions on its authorization. The AO eventually authorized private counsel in *Maynard* and *Giannini II*, but only for the limited purpose of attempting to secure the Judge's dismissal from the suit. The AO erred in so limiting the authorization. Once the threshold requirement has been met, the AO must fully authorize the judge to obtain private counsel. The AO may not condition or limit that authorization in any way. As noted above, such conditions or limitations create serious First Amendment problems. Consequently, we find that Judge Tashima was entitled to an unconditional authorization to obtain private counsel to mount his defense in *Maynard, Giannini I* and *Giannini II.*

B. *Judge Tashima's Legal Fees for Maynard, Giannini I and Giannini II*

After private counsel has been authorized, the next step in the process is the submission of fees. Once the suit has been resolved, private counsel must submit an itemized list of charges to the AO. The AO will then examine the charges to ensure that none is for offensive litigation actions and none is excessive. If none of the charges is for offensive litigation actions and none is excessive then the Administrative Office must pay the charges.

1. The AO is Authorized to Pay Judge Tashima's Fees as he did not Engage in any Offensive Litigation Action

 Judicial review of the AO's determination whether fees were for offensive or defensive litigation actions is a mixed question of law and fact and is reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (application of law to established facts is reviewed de novo where the issue requires consideration of legal concepts in a mix of facts and law, as

distinguished from an essentially factual inquiry). Our examination of the record reveals that Judge Tashima took no offensive litigation action in any of the three suits. Judge Tashima's conduct in each of those suits was entirely consistent with his position as a defendant. The judge filed several motions to dismiss and in all other ways conducted himself as would any other defendant. At no time during the litigation did the judge advance the position that Local Rule 2.2.1 was unconstitutional, nor did he file a counterclaim or take any other offensive actions. Therefore, we find that none of the fees that have been or will be submitted is for offensive litigation actions. Thus, the AO may not decline to pay on the basis that it lacks the statutory authority to do so. We find that under section 463, the AO is authorized to pay all Judge Tashima's legal expenses in connection with each of the three suits which challenged Local Rule 2.2.1.

2. The AO has Discretion to Decline to Pay Fees which it Determines are Excessive

The remaining issue is whether any of the fees that have been or will be submitted are excessive. Judicial review of the AO's decision to decline to pay fees on this basis is reviewed for abuse of discretion. It is the AO which has the discretion to determine whether any fees are excessive. The record indicates that only a portion of the charges and fees incurred by Judge Tashima in mounting his defenses in each of the three actions have been submitted to the AO for payment. With respect to the charges and fees which have already been submitted to the AO, the AO must pay all of those charges. At no time during the litigation has the AO asserted that any of the charges submitted for payment are excessive. Because the AO has not found that any of those charges are excessive, the AO has a duty to pay them. With respect to the charges and fees yet to be submitted, the AO must determine whether any are excessive. It may then, in the exercise of its statutory discretion, decline to pay any charges and fees which it

finds to be excessive. All fees and charges not found to be excessive must be paid.

The declaratory judgment of the district court is hereby AFFIRMED.