John McBRYDE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 01–144C.

United States Court of Federal Claims.

Aug. 24, 2001.

Arnon D. Siegel, Robbins, Russell, Englert, Orseck & Untereiner LLP, Washington, D.C., David Broiles, Fort Worth, TX, for plaintiff.

Shalom Brilliant, United States Department of Justice, Washington, D.C., for defendant.

## OPINION & ORDER

HODGES, Judge.

This is a suit for reimbursement of litigation expenses pursuant to 28 U.S.C. § 463 (1994). Plaintiff, a United States District Court Judge for the Northern District of Texas, seeks recovery of attorneys' expenses and fees he incurred in pursuing a mandamus action to challenge the transfer of two cases from his docket. Although we conclude that Section 463 is a money-mandating statute sufficient for invoking Tucker Act jurisdiction, we find that Judge McBryde is not entitled to relief because his action did not satisfy the statutory criteria permitting compensation.

### I. BACKGROUND

The material facts in this case are not in dispute. In the spring of 1995, Chief Judge Buchmeyer of the Northern District of Texas transferred two cases from Judge McBride's docket to Judge Buchmeyer's docket on the grounds that he had the authority to "divide the business and assign the cases so far as such rules and orders [of the district] do not otherwise prescribe." 28 U.S.C. § 137 (1994). Judge Buchmeyer also issued orders vacating Judge McBryde's previously issued orders in both cases. In response, plaintiff filed a "Request for Assistance in Resolution

of Dispute" under 28 U.S.C. § 332(d)(1) (1994) with the Fifth Circuit Judicial Council seeking to have the two cases returned to his docket.[1]

The Judicial Council referred plaintiff's request to a "Special Investigatory Committee." The Committee held a hearing in October 1995 and made a recommendation to the Judicial Council. The Council in turn denied Judge McBryde's Request for Assistance and reassigned the cases to Chief Judge Buchmeyer under the authority of 28 U.S.C. § 332.

Relying on 28 U.S.C. § 1651(a) (1994),[2] Judge McBryde petitioned the United States Court of Appeals for the Fifth Circuit for a writ of mandamus. The Fifth Circuit concluded that "Chief Judge Buchmeyer's and the Judicial Council's orders were not limited to providing a remedy for misconduct because they rested on the invalidation of judicial findings in a pending case and constituted a censure of the judge." *In re McBryde,* 117 F.3d 208, 230 (5th Cir.1997). The Circuit granted Judge McBryde's petition for a writ of mandamus and vacated the reassignment orders. *Id.* Plaintiff subsequently vacated Judge Buchmeyer's orders in those cases and had them stricken from the record. He also struck the order of the Judicial Council in both cases. Subsequently, he defended Judge Buchmeyer's unsuccessful attempts to obtain a rehearing, a rehearing *en banc,* and Supreme Court review.

Plaintiff submitted a request for reimbursement of attorneys' fees and legal expenses to the Administrative Office of the United States Courts. William R. Burchill Jr., Associate Director and General Counsel of the Administrative Office, denied his request stating that "[u]nder the plain terms of section 463 ... this agency lacks authority to reimburse a judicial officer or employee for any expenses of offensive litigation." (Letter from Burchill to McBryde of 8/6/98, at 1.) In a subsequent letter, Mr. Burchill further explained the denial of Judge McBryde's request:

> The fact that such litigation could plausibly be characterized as aimed at vindicating principles of judicial independence does not alter the offensive nature of the litigation. I do not believe section 463 can be construed to permit the use of judiciary appropriations to finance offensive litigation brought by judicial officers or employees whenever that litigation is arguably brought for the purpose of "defending" their official prerogatives. Such a reading would dramatically expand the reach of the statute beyond its intended ambit.

(Letter from Burchill to McBryde of 8/31/98, at 1–2.)

Plaintiff filed a complaint in the United States District Court for the District of Columbia in December 2000 seeking a declaration that the Administrative Office is obligated to pay the attorneys' fees and other litigation expenses he incurred in the mandamus proceedings. The District Court granted defendant's unopposed motion to transfer the case to this court in February 2001.

## II.  DISCUSSION

This case is before the court on defendant's motion to dismiss and plaintiff's motion for summary judgment. Defendant asks that we dismiss the second count of the complaint for lack of jurisdiction, or in the alternative, dismiss the entire complaint for failure to state a claim upon which relief may be granted. Plaintiff argues that he is entitled to summary judgment pursuant to 28 U.S.C. § 463 and the Compensation Clause of the United States Constitution.

1.

■ Defendant argues that the statute under which plaintiff seeks relief is not a "money-mandating statute." Jurisdiction is proper in this court where a statute exists that

---

1. Plaintiff submitted a twenty-two page document that included sections titled introduction, facts, reasoning, and action requested of the Judicial Council. The requested action was for the Judicial Council to issue an order declaring Judge Buchmeyer's transfer orders—"of no force or effect."

2. Section 1651(a) provides, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

"can fairly be interpreted as mandating compensation by the Federal Government for damage sustained." *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009, 178 Ct. Cl. 599, 607 (1967)). "If the language and effect of the statute is mandatory, then the court possesses jurisdiction ... If, on the other hand, the language of the statute is permissive in scope and effect, the statute does not grant jurisdiction to hear the case." *Lewis v. United States*, 32 Fed.Cl. 59, 64 (1994). Defendant argues that the use of the word "may" in Section 463 means that the statute authorizes payment according to the agency's discretion and does not mandate payment.

In *Tyson v. United States*, 91 Ct.Cl. 139, 140, 32 F.Supp. 135, 136 (1940), the Court of Claims held that a statute that set forth conditions under which informers might be paid was a money-mandating statute for the purpose of determining Tucker Act jurisdiction. In that case, the statute at issue was 19 U.S.C. § 1619 (1930), providing in relevant part:

Any person not an officer of the United States who furnishes to a district attorney, to the Secretary of the Treasury, or to any customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs law or the navigation laws, perpetrated or contemplated, which information leads to a discovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, <u>may be awarded and paid</u> by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case (emphasis added.)

The Claims Court held that Section 1619 was money-mandating because Congress intended an award to be made when a claimant met the statutory conditions. *Tyson*, 91 Ct.Cl. at 140, 32 F.Supp. 135. The court explained:

Congress did not intend to leave to the caprice or whim of the Secretary an informer's right to the award. It intended

to confer upon the informer an absolute right to demand the payment of the award when he had met the conditions precedent thereto laid down by Congress ... [W]hen the information was the first information which the Secretary had had, and when that information led to the recovery of duties, or of a fine, penalty, or forfeiture, then the informer was entitled as of right to the payment of the award, and if the Secretary of the Treasury arbitrarily or capriciously refused to pay it, the informer had the right to file suit in court to compel that payment. This is a Government of laws, not of men.

*Id.* (citations omitted).

We believe that the same reasoning applies here. 28 U.S.C. § 463 provides:

Whenever a Chief Justice, justice, judge, officer or employee of any United States court is sued in his official capacity, or is otherwise required to defend acts taken or omissions made in his official capacity, and the services of an attorney for the government are not reasonably available pursuant to chapter 31 of this title, the Director of the Administrative Office of the United States Courts <u>may pay</u> the costs of his defense. The Director shall prescribe regulations for such payments subject to the approval of the Judicial Conference of the United States (emphasis added.)

Congress enacted Section 463 "expressly [to] authorize the Director of the Administrative Office to 'pay the costs' when a Judge or Justice is sued in his official capacity and 'the services of an attorney for the government are not reasonably available'." S. REP. No. 97–275, at 15 (1981), *reprinted in* 1982 U.S.C.C.A.N. 11, 25–26. The Director was explicitly charged with the responsibility of promulgating regulations that would govern the conditions under which such payments would be made. It follows that Congress "did not intend to leave to the caprice or whim" of the Director who had a right to an award. *See Tyson*, 91 Ct.Cl. at 140, 32 F.Supp. 135; *See also Tashima v. Administrative Office of the United States Courts*, 967 F.2d 1264, 1271–72, (9th Cir.1992).[3] If

---

3. Although the issue of Tucker Act jurisdiction was not directly before the court, it focused on

an applicant's claim satisfies the statutory criteria, he or she is entitled to reimbursement. These criteria include being sued in a judge's official capacity or otherwise being required to defend official acts where the services of a government attorney are not reasonably available.

### 2.

Section 463 is a money-mandating statute, so we turn to the issue of whether plaintiff's claim satisfies the statutory criteria. Judge McBryde seeks reimbursement for litigation expenses associated with a mandamus action that he filed to challenge orders of Chief Judge Buchmeyer and the Judicial Council transferring cases from his docket against his will. The parties do not dispute that the services of a government attorney were not reasonably available to plaintiff to prepare, file, and argue his mandamus petition. Furthermore, there is no doubt that plaintiff was not "sued in his official capacity" when he chose to institute a mandamus proceeding.[4]

This is a case for reimbursement of legal expenses from the United States. The issue before this court is whether Congress, through its use of the phrase "otherwise required to defend acts taken ... in his official capacity," intended to authorize reimbursement of legal expenses incurred in a mandamus proceeding challenging orders transferring cases from a judge's docket for judicial actions taken in those cases. We find that it did not.

It is an established rule of statutory construction that "a statute must, if possible, be construed in such a fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Plaintiff argues that the inclusion of the phrase "otherwise required to defend" must extend the scope of the Section 463 beyond being sued in one's official capacity because "otherwise the quoted phrase would be mere surplusage." Although we agree with plaintiff's statement, we do not agree that Section 463's coverage extends to the type of litigation at issue in this case.

Plaintiff explains that he "was required to mount the defense he did through his petition for mandamus because he was the only one who had the motive or inclination to defend his judicial acts." He states that he was "coerced by outside agencies (his constitutionally required Oath and the governing canons of the Code of Conduct) to defend his judicial actions." We have no basis for determining whether Judge McBryde's Oath or the Code of Conduct obligated him to pursue the mandamus proceeding. We do conclude, however, that the Oath and the Code do not "require" defense of official judicial acts as the term is used in Section 463.

The purpose of Section 463 is to authorize reimbursement for litigation expenses incurred for services that would have been provided by government attorneys were it not for a conflict of interest or appearance of impropriety. *See* S. Rep. No. 97–275, at 15.[5]

---

the meaning of "may" in Section 463:

> While the use of the term "may" bars a finding that the statute establishes a clear unambiguous duty to pay *all* such fees, and thus bars a mandamus action, it does not as the AO suggests, grant the Administrative Office unfettered discretion to decide which judges are entitled to have the government pay for a defense of their official acts. Section 463 is essentially an authorizing statute, enacted to permit the expenditure of federal funds for the defense of federal judges who have been sued in their official capacity when the services of the Department of Justice are unavailable. *It is not a grant of discretion to the AO to pick and choose who will be defended and who will not. Tashima*, 967 F.2d at 1271–72 (emphasis added).

4. Plaintiff does argue that he was "sued" in his official capacity in the course of the Judicial

Council's investigation. Because plaintiff is not seeking reimbursement for representation in that proceeding, we do not address this argument.

5. The legislative history for Section 463 provides:

> Section 116 amends Chapter 21 of Title 28, U.S.C. by adding a new Section 463 to that Chapter. The newly created section 463 would expressly authorize the director of the Administrative Office to 'pay the costs' when a judge or justice is sued in his official capacity and 'the services of an attorney for the government are not reasonably available pursuant to Chapter 31 (of Title 28).' Under Chapter 31 generally, and 28 U.S.C. Sec. 516 in particular, the Attorney General is responsible for providing the services of an attorney to a judge sued in his official capacity. Usually services are provided by U.S. Attorneys and their assistants,

Department of Justice regulations provide that government representation is available to a federal employee "in civil, criminal and Congressional proceedings in which he is *sued, subpoenaed,* or *charged* in his individual capacity ... when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determine that providing representation would otherwise be in the interest of the United States." 28 C.F.R. § 50.15(a) (2000) (emphasis added). Section 50.15(a)(10) provides that in the event of legal and factual conflicts between various employees in the same case, "[c]ircumstances may make it advisable that private representation be provided to all conflicting groups and that direct Justice Department representation be withheld so as not to prejudice particular defendants."[6]

The *Guide to Judiciary Policies and Procedures* provides that the decision of the Director of the Administrative Office to reimburse expenses associated with legal representation by private counsel will by guided by the opinion of the Comptroller General (No. B–178369, October 31, 1973), published at 53 Comp. Gen. 301 (1973). *See Guide to Judiciary Policies and Procedures,* Vol. I, Ch. XI, Part D § 3C (*reissued* April 2001) ("*Guide*"). The *Guide* provides that the Director of the Administrative Office may reimburse litigation expenses for judges "where the resources of the Department of Justice are unavailable ... and where the entry of

an appearance for the judicial defendants is found to be necessary to protect their legal interests or to uphold their immunity in an action for personal damages." *Id.*

The Comptroller General stated:

We strongly feel that the decision in each case as to the necessity for and the amount of representation required, if any, should be made by someone other than the defendant or respondent (i.e., the judicial officer or entity involved) in that case. In other words, we do not feel that the determination as to whether a defense of a judicial officer's ruling or a judicial body's rule is in the best interest of the United States and necessary to carry out the functions of the judiciary, should be made by the judicial officer or body concerned. Such an independent determination made by your office [Administrative Office of the United States Courts] would be designed to assure, to the extent possible, that appropriated funds are used only to the extent necessary to protect the judiciary's interest in the outcome of the subject litigation, rather than the Judicial officer's personal interest in having his decision upheld....

53 Comp. Gen. at 306.

█ We believe that the Administrative Office's *Guide*, the Department of Justice's regulations, and the Comptroller General's opinion are consistent with the meaning of "otherwise required to defend" as Congress intended it in enacting Section 463.[7] Section

---

individuals who routinely represent the Government in litigation before judges they are also required to represent. While many instances may arise in which no 'conflict of interest' or 'appearance of impropriety' exists, or is perceived to exist by the public, only a few such cases will be enough to permanently damage the legal system's reputation. Under Section 463 of Title 28, as created by Section 103 of the bill, the Director of the Administrative Office is required to prescribe regulations governing the payment he is therein authorized to make. Those regulations must be approved by the Judicial Conference of the United States.

6. In *Caramucci v. United States,* 12 Cl.Ct. 263, 269 (1987), this court held that Department of Justice Regulations did not provide a basis for obtaining reimbursement when a conflict did not rise to a level of a present conflict in factual or legal positions actually taken, but rose only to a

conflict of a personal nature which did not affect the position taken in the litigation. The court concluded: "The Attorney General has set certain conditions upon which the Government will pay private counsel for representation of an individual. If those limited conditions are not met, this court does not have authority to order payment ...." *Id.* at 271.

7. *See also Tashima,* 967 F.2d at 1272–73, where the Ninth Circuit explained: "The crux of the matter is whether the judge acted like a defendant or acted like a plaintiff. Bringing a motion to dismiss, as Judge Tashima did here, is a defensive action. A motion to dismiss seeks to deny liability and to prevent recovery and thus, is by nature defensive. Conversely, filing a counterclaim is an offensive action. A counterclaim seeks to establish liability and to obtain some form of recovery and thus, is by nature offensive."

463 is designed to provide judicial employees reimbursement for legal expenses incurred in defense of official acts when government attorneys are unavailable due to a conflict of interest. The term "otherwise required to defend" was intended to cover instances where a judicial employee is called upon to defend his judicial acts other than the defendant in a lawsuit. Examples of such instances may include defending a judicial employee subpoenaed in his official capacity as a witness before Congress, an administrative body, a court, or a grand jury. The phrase does not apply to a case of this nature where one judge sues another judge and the Judicial Council to challenge orders transferring cases from his docket.[8]

### 3.

■ Plaintiff claims that the denial of his request for reimbursement of the legal expenses he incurred is "tantamount to an indirect reduction in his income." The Compensation Clause of the Constitution requires that "Judges ... shall, at stated Times, receive for their Services a Compensation, which shall not be diminished during their Continuance in Office." U.S. CONST., art. III, § 1. Pursuant to this Clause, Congress cannot directly diminish judges' salaries. *See United States v. Will*, 449 U.S. 200, 226, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). The Supreme Court recently held that the Clause prohibits "taxation that singles out judges for specially unfavorable treatment ..." *United States v. Hatter*, 532 U.S. 557, ——, 121 S.Ct. 1782, 1787, 149 L.Ed.2d 820 (2001), *quoting O'Malley v. Woodrough*, 307 U.S. 277, 289, 59 S.Ct. 838, 83 L.Ed. 1289 (1939).

Plaintiff cites *Hatter* for "the principle that the Compensation Clause barred indirect reductions in, as well as direct diminishment of, a judge's pay." For example, the Clause "offers protections that extend beyond a legislative effort directly to diminish a judge's pay," *Hatter*, 532 U.S. at ——, 121 S. Ct. at 1791, *citing Evans v. Gore*, 253 U.S. 245, 254, 40 S.Ct. 550, 64 L.Ed. 887 (1920). Furthermore, he argues that the clause cannot be read to protect judges "only against a reduction in stated salary, not against indirect measures that only reduce take-home pay." *Hatter*, 532 U.S. at ——, 121 S.Ct. at 1795.

The Supreme Court held that a tax that "singles out judges for specially unfavorable treatment" violates the Compensation Clause. The result of such a tax is to reduce the compensation that a judge earns for providing judicial services to the United States. The only "indirect measure" to diminish a judge's salary that the Court recognized in *Hatter* was taxation. Plaintiff's argument that the Administrative Office's decision not to reimburse his litigation expenses is another "indirect measure" that diminishes his compensation, is not persuasive. We do not believe that the Compensation Clause requires reimbursement of litigation expenses that a judge himself determines are necessary to vindicate his legal positions in the circumstances of this case.

### III.  CONCLUSION

Plaintiff is not entitled to reimbursement of expenses he incurred in pursuing his mandamus action. We direct that the Clerk enter summary judgment for defendant and dismiss plaintiff's complaint. No costs.

---

**8.**  We do not hold that the filing of a mandamus petition always would fall outside the scope of Section 463. Indeed, the filing of a mandamus action or a motion to quash may be the most appropriate way to defend against being called to testify or otherwise appear before Congress, an administrative body, a court, or a grand jury.